68 F.3d 253
 FOND DU LAC BAND OF CHIPPEWA INDIANS; Robert Peacock;
Peter Defoe; Clifton Rabideaux; Herman Wise;
George Dupuis, Plaintiffs-Appellees,
v.
Arne CARLSON, Governor of Minnesota; Rodney Sando,
Commissioner of the Minnesota Department of Natural
Resources; Raymond B. Hitchcock, Assistant Commissioner of
Operations, Minnesota Department of Natural Resources,
Defendants-Appellants.
 No. 94-3709.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 16, 1995.
Decided Oct. 18, 1995.
 
 Scott Ray Strand, Assistant Attorney General, argued, St. Paul, MN (William A. Szotkowski, Jerilyn K. Aune and Peter L. Tester, on the brief, St. Paul, MN), for appellants.
 Douglas Endreson, argued, Washington, DC (Henry M. Buffalo, Jr., Minneapolis, MN, William R. Perry and Anne D. Noto, Washington, DC, and Dennis J. Peterson, Cloquet, MN, on the brief), for appellees.
 Before McMILLIAN, LAY, and LOKEN, Circuit Judges.
 LAY, Circuit Judge.
 
 
 1
 The Fond du Lac Band of Chippewa Indians and five individual members of the Band filed suit under 42 U.S.C. Sec. 1983 seeking injunctive relief against Minnesota state officials as to the prospective enforcement of Minnesota's fish and game laws. The Band claims that the fish and game laws, as applied to members of the Band, are preempted by treaty rights arising from 1837 and 1854 treaties between the Lake Superior Chippewa Indians and the United States.[1] The defendant state officials, Arne Carlson, governor of Minnesota, Rodney Sando, the commissioner of the Minnesota Department of Natural Resources, and Raymond B. Hitchcock, assistant commissioner of operations for the Minnesota Department of Natural Resources, claim they are immune from suit under the Eleventh Amendment of the United States Constitution. The district court denied the state officials' motion for summary judgment on the defense of sovereign immunity. This interlocutory appeal followed.[2]
 
 
 2
 The Eleventh Amendment bars suits "against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The state officials acknowledge, as indeed they must, a basic exception to the immunity doctrine established in Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Ex parte Young recognized that suits may be brought in federal court against state officials in their official capacities for prospective injunctive relief to prevent future violations of federal law. See Puerto Rico Aqueduct, 506 U.S. at ----, 113 S.Ct. at 688; Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 2312 n. 10, 105 L.Ed.2d 45 (1989); Puerto Rico v. Branstad, 483 U.S. 219, 228, 107 S.Ct. 2802, 2808, 97 L.Ed.2d 187 (1987); Green v. Mansour, 474 U.S. 64, 68, 106 S.Ct. 423, 425-26, 88 L.Ed.2d 371 (1985); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 102-03, 104 S.Ct. 900, 909-10, 79 L.Ed.2d 67 (1984); Edelman v. Jordan, 415 U.S. 651, 665, 94 S.Ct. 1347, 1356-57, 39 L.Ed.2d 662 (1974); Dover Elevator Co. v. Arkansas State Univ., 64 F.3d 442, 447 (8th Cir.1995). The doctrine of Ex parte Young is based on the idea that the power of federal courts to enjoin "continuing violation[s] of federal law [is] necessary to vindicate the federal interest in assuring the supremacy of that law." Green, 474 U.S. at 68, 106 S.Ct. at 426.
 
 
 3
 The state officials contend this lawsuit falls within an exception to the Ex parte Young doctrine where the state is the real party in interest, despite the fact that individual state officials are named as defendants. The state officials argue the suit in the present case is in reality against the state because the relief sought encroaches upon "core sovereign functions of a state," namely, fish and game regulations relating to criminal law enforcement and public land management. Brief for Appellants at 11-12.
 
 
 4
 The state officials rely on Seminole Tribe of Florida v. Florida, 11 F.3d 1016, 1029 (11th Cir.1994), cert. granted, --- U.S. ----, 115 S.Ct. 932, 130 L.Ed.2d 878 (1995), to support their argument that the Band's suit here is in reality against the state. In Seminole Tribe, the lawsuit against the governor of Florida was based on the Indian Gaming Regulatory Act, 25 U.S.C. Secs. 2701-21 ("IGRA"), which "uniformly addresses itself to 'the State'," 11 F.3d at 1029, and authorizes federal jurisdiction when Indian tribes sue based on "the failure of a State" to negotiate a gaming compact with an Indian tribe. 25 U.S.C. Sec. 2710(d)(7)(A)(i). In those circumstances, the Eleventh Circuit found that the lawsuit against the governor of Florida was "in reality" against the state. 11 F.3d at 1029. In this case, however, Congress has created rights in the members of the Band that state officials are allegedly infringing, rather than imposed duties on "a State" as in Seminole Tribe.
 
 
 5
 If the Band had named the state itself as defendant, or was seeking to enjoin violations of state law, then the Eleventh Amendment would bar this suit regardless of the relief sought. See Pennhurst, 465 U.S. at 106, 104 S.Ct. at 911 (in lawsuit for injunctive relief based on state law, "the entire basis for the doctrine of Young ... disappears"). This case, however, seeks to vindicate important federal rights, and thus falls squarely within the doctrine of Ex parte Young. The fact that, if the Band is successful, the state officials will be required prospectively to "shape their official conduct to the mandate" of an injunction and "would more likely have to spend money from the state treasury than if they had been left free to pursue their previous course of conduct ... is a permissible and often an inevitable consequence of the principle announced in Ex parte Young." Edelman, 415 U.S. at 668, 94 S.Ct. at 1358.
 
 
 6
 The state officials urge, however, that the requested injunction here could have a much greater effect on Minnesota's sovereign functions than previous cases and could result in "perpetual federal court supervision" over the state's fish and game regulations. Reply Brief for Appellants at 4. Such supervision may be necessary, the state officials suggest, to evaluate annual fish and wildlife population surveys and to ensure that annual harvest allocation formulas are correctly calculated. Id. at 3-4. The possibility of such extensive relief, however, does not mandate Eleventh Amendment immunity for the defendants. Where necessary to ensure compliance with federal law, the Supreme Court has approved broad injunctive relief aimed at state officials. See, e.g., Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n, 443 U.S. 658, 695-96, 99 S.Ct. 3055, 3079-80, 61 L.Ed.2d 823 (1979) (upholding district court's authority to mandate state regulations or to supervise directly fisheries in the state if state refuses to promulgate and enforce regulations needed to comply with federal treaty rights).
 
 
 7
 The state officials also urge that an injunction here would impermissibly interfere with the discretion they exercise in formulating and implementing fish and game policy. See Ex parte Young, 209 U.S. at 158, 28 S.Ct. at 453.
 
 
 8
 Again, the state officials rely on Seminole Tribe, where the court held that a lawsuit to compel negotiation of a gaming compact in good faith under IGRA would compel a discretionary act by state officials and thus did not fall within Ex parte Young. 11 F.3d at 1028-29. Rather than compel negotiations, however, the Band here seeks to prevent future violations of federal treaty rights. In such a case, state officials are "simply prohibited from doing an act which [they] ha[ve] no legal right to do." Ex parte Young, 209 U.S. at 159, 28 S.Ct. at 453. Thus, the discretionary act exception to Ex parte Young is inapplicable in this case.
 
 
 9
 As a final argument, the state officials contend the Supreme Court has indicated the doctrine of Ex parte Young should be significantly curtailed.[3] The state officials cite the Supreme Court's decision in Blatchford v. Native Village of Noatak, 501 U.S. 775, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991), in which the Court held that Eleventh Amendment immunity protects states from suit by Indian tribes even though it does not bar suits by sister states or the United States. Id. at 779-82, 111 S.Ct. at 2581-83. The Court thus rejected the tribe's claim for retroactive money damages against a state official. The Court also remanded the tribe's claim for prospective injunctive relief against the official to the court of appeals for "initial consideration" because that court had not addressed the issue. Id. at 788, 111 S.Ct. at 2585-86. We agree with the Band, however, that this statement simply reflects the Court's ordinary practice of not addressing an issue until it has been addressed below. Moreover, on remand, the Ninth Circuit reaffirmed the principles of Ex parte Young. Native Village of Noatak v. Blatchford, 38 F.3d 1505, 1511-12 (9th Cir.1994) (citing Edelman, 415 U.S. at 664-67, 94 S.Ct. at 1356-58).
 
 
 10
 Indeed, the Supreme Court's reasoning in Blatchford supports our conclusion here that the Band may maintain a lawsuit against state officials seeking prospective injunctive relief against violations of their federal treaty rights. Blatchford noted that "mutuality" would be lacking if Indian tribes could sue the states when the Court had already held that Indian tribes enjoy immunity against suits by the states. 501 U.S. at 782, 111 S.Ct. at 2582-83 (citing Oklahoma Tax Comm. v. Citizen Band Potawatomi Indian Tribe, 498 U.S. 505, 509, 111 S.Ct. 905, 909, 112 L.Ed.2d 1112 (1991)). Here, by contrast, states have the right to sue tribal officials under the principles of Ex parte Young, see Potawatomi Indian Tribe, 498 U.S. at 514, 111 S.Ct. at 911-12; cf. Baker Elec. Coop., Inc. v. Chaske, 28 F.3d 1466, 1471 (8th Cir.1994) (tribal officers' immunity subject to Ex parte Young ); Northern States Power Co. v. Prairie Island Mdewakanton Sioux Indian Community, 991 F.2d 458, 460 (8th Cir.1993) (same), and thus the right of Indian tribes to sue state officials under Ex parte Young provides appropriate "mutuality."
 
 
 11
 For the reasons stated, the district court's decision rejecting the defendant state officials' motion for summary judgment based on Eleventh Amendment principles of sovereign immunity is affirmed.
 
 
 
 [1]
 The Band claims that under the Treaties of July 29, 1837, 7 Stat. 536, and September 30, 1854, 10 Stat. 1109, in exchange for ceded territories of Indian land, the United States promised the Lake Superior Chippewa Indians, including the Fond du Lac Band, the right to hunt, fish, and gather natural resources from the ceded territories in northeastern Minnesota and northwestern Wisconsin. In 1992, the Minnesota state officials announced that they would enforce state fish and game laws against Band members who hunt and fish in the ceded territories. The Band brought this suit to enjoin the state officials from interfering with the treaty rights
 
 
 [2]
 This court has jurisdiction to review the interlocutory ruling under the collateral order doctrine. See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993)
 
 
 [3]
 In support of this contention, the state officials point to two bodies of law that recognize the vitality of state sovereignty
 First, the state officials suggest our decision on Eleventh Amendment immunity should be guided by Tenth Amendment principles that insulate states from certain congressional directives. See New York v. United States, 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992). The state officials argue that if federal courts tell states how to regulate hunting and fishing, federal courts will achieve what Congress itself may not be able to achieve directly. As the state officials recognize, however, the Supreme Court has held that courts under Article III and the Supremacy Clause have the power to order states to perform acts that Congress lacks. See id. at 178-80, 112 S.Ct. at 2430 ("[T]hat federal courts may in proper circumstances order state officials to comply with federal law ... [does not] imply any authority on the part of Congress to mandate state regulation.").
 Second, the state officials argue that the principles of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), should guide our decision regarding Eleventh Amendment immunity. In Younger, the Court held that federal courts should abstain from enjoining pending state criminal prosecutions on a rationale of federal-state "comity." Id. at 44, 91 S.Ct. at 750. Younger, however, did not imply that federal courts lack jurisdiction to hear a claim, as the Eleventh Amendment does. See Puerto Rico Aqueduct, 506 U.S. at ---- - ----, 113 S.Ct. at 688-89. The state officials did not ask the district court to dismiss this suit based on principles of abstention, and thus we do not address that issue here.