# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 96-2975

_____

Santee Sioux Tribe of Nebraska,        *
a Federally Recognized Indian Tribe,   *
                                       *
    Plaintiff-Appellant,          *
                                       *   Appeal from the United States
    v.                            *   District Court for the
                                       *   District of Nebraska.
State of Nebraska; E. Benjamin         *
Nelson, Governor of the                *
State of Nebraska,                     *
                                       *
    Defendants-Appellees.         *

_____

Submitted:  March 14, 1997

Filed:  August 13, 1997

_____

Before McMILLIAN, FLOYD R. GIBSON, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Santee Sioux Tribe of Nebraska (Tribe) appeals the district court's[1] order dismissing for lack of jurisdiction the Tribe's action against the State of Nebraska

---

[1]The Honorable William G. Cambridge, Chief Judge, United States District Court for the District of Nebraska.

(State) and its governor, E. Benjamin Nelson, filed pursuant to the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701-21 (1994). The district court determined the State had not consented to the Tribe's suit and, relying on <u>Seminole Tribe of Florida v. Florida</u>, 116 S. Ct. 1114 (1996), sua sponte dismissed the Tribe's action. The Tribe appeals, asserting the State waived its Eleventh Amendment immunity by enacting a statute referencing the IGRA, or alternatively, by filing an answer and counterclaim in this lawsuit. The Tribe further argues that Governor Nelson is subject to suit pursuant to the doctrine of <u>Ex parte Young</u> .[2] We affirm.

I.

The IGRA was enacted in 1988 for the purpose of providing a statutory basis for the operation and regulation of Indian gaming. <u>See</u> 25 U.S.C. § 2702; <u>Seminole Tribe</u>, 116 U.S. at 1119. Under the IGRA, Indian gaming is divided into three classes; class I (social games for prizes of minimal value or traditional forms of Indian gaming performed in connection with tribal ceremonies or celebrations), class II (bingo and other games of chance similar to bingo, and certain card games), and class III (all other forms of gaming that are not class I or class II gaming). <u>See</u> 25 U.S.C. § 2703 (6)-(8). Section 2710 describes those situations where class III gaming is legal, and provides in part that such gaming must be "conducted in conformance with a Tribal-State compact entered into by the Indian Tribe and the State" under the IGRA. <u>See</u> 25 U.S.C. § 2710(d)(1)(C). The IGRA further describes the manner of negotiating Tribal-State compacts; any Indian tribe having jurisdiction over Indian lands where class III gaming is being conducted, or is to be conducted, must request the state in which the

---

[2]In <u>Ex parte Young</u>, 209 U.S. 123 (1908), the Supreme Court recognized that suits may be brought in federal court against a state official in his official capacity where prospective injunctive relief is sought to end a continuing violation of federal law. <u>See</u> <u>In re SDDS, Inc.</u>, 97 F.3d 1030, 1035 (8th Cir. 1996) (citing <u>Fond du Lac Band of Chippewa Indians v. Carlson</u>, 68 F.3d 253, 255 (8th Cir. 1995)).

lands are located to enter into negotiations for the purpose of entering into a Tribal-State compact governing such class III gaming. See 25 U.S.C. § 2710(d)(3). Upon receiving such a request, the state is required to negotiate in good faith with the Indian tribe to enter into such a compact, and United States district courts have jurisdiction over any cause of action initiated by an Indian tribe arising from a state's failure to enter into negotiations or to conduct such negotiations in good faith. See id.; 25 U.S.C. § 2710(d)(7)(A)(i).

In February 1996, the Tribe filed a complaint in the United States District Court for the District of Nebraska, alleging the State and Governor Nelson failed to conduct good faith negotiations with the Tribe for purposes of entering into a Tribal-State compact for conducting class III gaming on the Tribe's reservation. The Tribe sought declaratory relief and requested an order compelling the State to form a Tribal-State compact within sixty days. The State answered, urging that the suit was barred by Eleventh Amendment immunity; the State also filed a counterclaim, requesting a declaratory judgment that the Tribe's casino operations were being conducted in violation of IGRA and seeking a permanent injunction enjoining the Tribe from operating its casino.

In March 1996, the Supreme Court decided Seminole Tribe, holding that Congress lacked authority under the Indian Commerce Clause to abrogate the states' sovereign immunity, and that section 2710(d)(7) cannot grant federal jurisdiction over states that do not consent to suit. See Seminole Tribe, 116 S. Ct. at 1119. The Court further held the doctrine of Ex parte Young inapplicable to allow suit against Florida's governor, thus finding the suit against the governor also barred by the Eleventh Amendment. Id. at 1132-33.

In April 1996, the district court dismissed the Tribe's action sua sponte, relying on Seminole Tribe; the court dismissed the State's counterclaim as well. The court denied the Tribe's motions for a new trial and to amend the complaint. The Tribe

appeals, arguing that the State waived its immunity by enacting Neb. Rev. Stat. § 9-1,106 (Supp. 1996), entitled "Tribal-state compact governing gaming; Governor; powers," which states in relevant part:

> (1) Upon request of an Indian tribe having jurisdiction over Indian lands in Nebraska, the Governor or his or her designated representative or representatives shall, pursuant to 25 U.S.C. 2710 of the federal Indian Gaming Regulatory Act, negotiate with such Indian tribe in good faith for the purpose of entering into a tribal-state compact governing the conduct of Class III gaming as defined in the act. A compact which is negotiated pursuant to this section shall be executed by the Governor without ratification by the Legislature.

> * * *

> (3) Such compact negotiations shall be conducted pursuant to the provisions of 25 U.S.C. 2710 of the federal Indian Gaming Regulatory Act.

Alternatively, the Tribe suggests the State waived its immunity by filing a counterclaim and requesting declaratory and injunctive relief. Finally, the Tribe argues that the State's enactment of section 9-1,106 subjects Governor Nelson to suit under Ex parte Young.

The State urges that section 9-1,106 did not waive Eleventh Amendment immunity as to either the State or Governor Nelson, and that an assistant attorney general may not waive the State's Eleventh Amendment immunity by answering a complaint in federal court and filing a counterclaim.

II.

Under the Eleventh Amendment to the United States Constitution, the "[j]udicial

-4-

power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. While not specifically set forth in the text, the Eleventh Amendment has been interpreted "to extend to suits by all persons against a state in federal court." Moad v. Arkansas State Police Dep't, 111 F.3d 585, 586 (8th Cir. 1997) (internal quotations omitted). A state, however, may consent to suit in federal court. See Burk v. Beene, 948 F.2d 489, 493 (8th Cir. 1991).

This court reviews de novo the question of whether a state waives Eleventh Amendment immunity. See Thomas v. FAG Bearings Corp., 50 F.3d 502, 504 (8th Cir. 1995). "The test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985). A State is "deemed to have waived its immunity only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." Id. at 239-40 (internal quotations omitted). Federalism interests "require that such a waiver be clear and unequivocal." Burk, 948 F.2d at 493 (citing Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 305 (1990)). A State's general waiver of sovereign immunity is insufficient to waive Eleventh Amendment immunity, because to waive Eleventh Amendment immunity, the state must specify an intent to subject itself to federal court jurisdiction.[3] See Atascadero, 473 U.S. at 241.

---

[3]While the Nebraska Constitution provides that the "state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought," Neb. Const. art. V, § 22, "the provision is not self-executing, it permits the state to lay its sovereignty aside and consent to be sued on such terms and conditions as the Legislature may prescribe." See Hoiengs v. County of Adams, 516 N.W.2d 223, 234 (Neb. 1994).

-5-

III.

A.

We conclude neither the language of section 9-1,106, nor its purpose as reflected in its legislative history indicates the State of Nebraska's consent to federal court jurisdiction. The plain language of section 9-1,106 does not contain a clear and unequivocal waiver of Eleventh Amendment immunity. Further, the legislative history of section 9-1,106 reflects that the legislature was concerned that the IGRA does not designate which state official shall be responsible for negotiating the Tribal-State compact, and was aware that at least one other state's court had concluded the state's governor lacked authority to negotiate on behalf of the state.[4] Accordingly, section 9-1,106 was introduced and passed for the purpose of assuring the governor of Nebraska the power to negotiate Tribal-State compacts on behalf of the State of Nebraska without ratification by the Nebraska Legislature. See Introducer's Statement of Intent on L.B. 231, Neb. Unicameral, 93rd Leg., 1st Sess. (Feb. 22, 1993); Kenneth C. Winston, Committee Counsel, Memo to Members of the General Affairs Committee of the Nebraska Unicameral regarding L.B. 231 (Feb. 22, 1993); Committee Statement of the General Affairs Committee of the Nebraska Unicameral, L.B. 231, 93rd Leg., 1st Sess. (Feb. 22, 1993); Hearing on L.B. 231, Before Committee on General Affairs of the Nebraska Unicameral, 93rd Leg., 1st Sess. 82-85 (Feb. 22, 1993) (remarks of Kenneth Winston and John Adams).

Rosebud Sioux Tribe v. Val-U Construction Co., 50 F.3d 560 (8th Cir.), cert. denied, 116 S. Ct. 78 (1995), cited by the Tribe is inapposite. In Rosebud, we concluded that the Rosebud Tribe's contractual agreement to decide disputes in

---

[4]In State ex rel. Stephan v. Finney, 836 P.2d 1169, 1185 (Kan. 1992), the Kansas Supreme Court determined that Kansas's governor could negotiate with the tribes for a Tribal-State compact, but lacked authority to bind the State to the compact.

accordance with arbitration rules, which themselves contained a consent to judgment upon an arbitration award by a federal court, constituted a waiver of tribal sovereign immunity as to claims arising "under the contract." Id. at 562-63. In the instant action, by contrast, the Nebraska Legislature has merely specified that Nebraska's governor shall conduct class III negotiations without ratification of the Legislature and that the negotiations are to be conducted pursuant to IGRA. It cannot reasonably be said that, by referring to a federal statute that includes an unconstitutional attempt to abrogate states' Eleventh Amendment immunity, the Nebraska Legislature intended to waive Nebraska's immunity.

## B.

We further conclude the Nebraska assistant attorney general's conduct in answering the complaint and filing a counterclaim does not constitute a waiver of Nebraska's Eleventh Amendment immunity. While it is true that a state may waive Eleventh Amendment immunity through its conduct, see Hankins v. Finnel, 964 F.2d 853, 856 (8th Cir.), cert. denied, 506 U.S. 1013 (1992), a state official may waive the state's immunity only where specifically authorized to do so by that state's constitution, statutes, or decisions. See Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 467 (1945); Booth v. Maryland, 112 F.3d 139, 145 n.2 (4th Cir. 1997) ; Estate of Porter ex rel. Nelson v. Illinois, 36 F.3d 684, 690-91 (7th Cir. 1994); Silver v. Baggiano, 804 F.2d 1211, 1214 (11th Cir. 1986). The Tribe has failed to demonstrate that waiver of the State's Eleventh Amendment immunity is within the authority of Nebraska's attorney general. See O'Connor v. Slaker, 22 F.2d 147, 152-53 (8th Cir. 1927), appeal dismissed, 278 U.S. 188 (1929).

We thus conclude the Tribe's action against the State is barred by the Eleventh Amendment.

C.

We also conclude the Tribe's action against Governor Nelson is barred by the Eleventh Amendment, as the amendment operates to bar suit against a state official where the state is the "'real, substantial party in interest.'" See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 (1984) (quoting Ford Motor Co., 323 U.S. at 464)); Dover Elevator Co. v. Arkansas State Univ., 64 F.3d 442, 447 (8th Cir. 1995). Although the doctrine of Ex parte Young, allows suit against state officials in their official capacity for prospective injunctive relief to prevent continuing violations of federal law, see Seminole Tribe, 116 S. Ct. at 1132, we must reject the Tribe's assertion that its suit against Governor Nelson falls within this exception. In Seminole Tribe, the Supreme Court held the doctrine of Ex parte Young inapplicable to a suit against the governor of Florida to enforce IGRA, recognizing that Congress had prescribed a detailed remedial scheme for enforcing section 2710(d)(3), with significantly fewer remedies than those available under Ex parte Young, thus signaling Congress's intent to limit relief to that available under the statute. See Seminole Tribe, 116 S. Ct. at 1133.

We further reject the Tribe's contention that the State's enactment of section 9-1,106 subjects Governor Nelson to liability under the doctrine of Ex parte Young. While any failure of Nelson to comply with section 9-1,106 may amount to a violation of state law, the doctrine of Ex parte Young operates to prevent only violations of **federal** law. See Pennhurst, 465 U.S. at 106.

We thus conclude the Tribe's suit against Governor Nelson is barred by the Eleventh Amendment.

D.

Finally, given our disposition of this matter, we conclude the district court did

not abuse its discretion in denying the Tribe's motions for a new trial and to amend its complaint.  See Harbor Ins. Co. v. Essman,  918 F.2d 734, 739 (8th Cir. 1990).

IV.

For the foregoing reasons, we affirm the judgment of the district court.

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent.  Because I believe the State waived its sovereign immunity and consented to suit, I would reverse in part and affirm in part[5] the order of the district court and remand the case for a new trial.

The Seminole Tribe decision did not abolish the well-established exception to the Eleventh Amendment which allows federal courts to entertain suit against a state where the state has waived its sovereign immunity and consented to suit in federal court.  See, e.g., Atascadero State Hosp. v. Scanlon, 473 U.S. at 238, citing Clark v. Barnard, 108 U.S. 436, 447 (1883).  A state may waive its immunity from suit in federal court by express or implied language, or a state's waiver of its sovereign immunity may be inferred through its conduct.  Hankins v. Finnel, 964 F.2d at 856.  However, "if [a waiver is] implied, it must appear 'by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.'"  Id., quoting Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. at 305 (internal quotation omitted).

---

[5]I concur in the majority's opinion regarding Governor Nelson's immunity from suit.  See supra at 8.

I.      Waiver by Neb. Rev. Stat. § 9-1,106

I would hold that the State waived its immunity and consented to this type of suit by the legislature's enactment of Neb. Rev. Stat. § 9-1,106. Section 9-1,106(1),(3) incorporates into state law the provisions of the IGRA requiring states to negotiate in good faith tribal-state compacts for class III gaming and granting federal courts jurisdiction over claims against states by an Indian tribe. Because § 9-1,106 expressly incorporates the provisions of 25 U.S.C. § 2710, the State's duty under the IGRA to negotiate tribal-state compacts, which Nebraska law delegates to the Governor or his or her designated representative under § 9-1,106, cannot be separated from the remedial provisions establishing the federal district court's jurisdiction over actions involving that duty. See Seminole Tribe, 116 S. Ct. at 1132 (the State's duty to negotiate imposed by § 2710(d)(3) does not stand alone; "Congress passed § 2710(d)(3) in conjunction with the carefully crafted and intricate remedial scheme set forth in § 2710(d)(7)"). In fact, the legislative history of § 9-1,106, which is cited in the majority's opinion,[6] contains a statement by the legal counsel for the Committee on General Affairs explaining that under the IGRA, "if a compact has not been negotiated during that time period [provided by the IGRA] then the tribe is allowed to bring a lawsuit against the state." See Hearing on L.B. 231, Before Committee on General Affairs of the Nebraska Unicameral, 93rd Leg., 1st Sess. 82-85 (Feb. 22, 1993) (remarks of Kenneth C. Winston, Committee Counsel), reprinted in Appellee's Addendum at 6-7. Despite this explanation, the Nebraska Legislature enacted § 9-06 and incorporated the IGRA's provisions allowing a tribe to bring suit against the State in federal district court. While § 9-1,106 does not contain an express waiver of the State's sovereign immunity, compare Idaho Code § 67-429A (and S.L. 1993, ch. 367) (expressly consenting to certain litigation involving class III gaming issues and waiving any Eleventh Amendment immunity question), it also does not contain language disavowing waiver of sovereign immunity in its reference to the IGRA and the methods

---

[6]See supra at 6.

by which a tribe is allowed to bring suit against the State, see Hankins, 964 F.2d at 857 (although Missouri legislature expressed its intent not to waive sovereign immunity by its enactment of certain statutes, such disavowal of waiver was inapplicable where statute involved in action failed to express such intent). The State recognized the IGRA's contemplation of suit by a tribe against a state and expressly incorporated those provisions into § 9-1,106. I would hold that an implied waiver of the State's Eleventh Amendment immunity from suit "appear[s] by such overwhelming implication from the text [of § 9-1,106] as [to] leave no room for any other reasonable construction." See Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. at 305. The Supreme Court holding in Seminole Tribe does not change this result.

II.     Waiver by Conduct

Alternatively, I would hold that the State waived its immunity by making a general appearance before the district court and filing counterclaims against the Tribe. See Hankins, 964 F.2d at 856. In Hankins, this court found that the State of Missouri had waived its immunity to suit by filing an action to attach the proceeds of a judgment obtained by an inmate against the State pursuant to 42 U.S.C. § 1983 because "the State acted to the advantage of and for the benefit of itself." Id. at 858. In the present case, like in Hankins, the State acted to the advantage of and for the benefit of itself by filing a counterclaim against the Tribe and seeking declaratory and injunctive relief. Furthermore, the State's argument that Nebraska's attorney general lacked the authority to waive the State's Eleventh Amendment immunity by his actions "overlooks the fact that the [a]ttorney [g]eneral acted under the authority of [9-1,106]. See id. at 858-59 (Missouri's attorney general acted under authority of state statute which did not include language disavowing waiver of sovereign immunity). I would therefore hold that such action constitutes a waiver of the State's Eleventh Amendment immunity.

Because I believe the State effectuated a waiver and consented to suit, I would reverse in part and affirm in part the order of the district court and remand the case for

a new trial on the issue of the State's liability under the IGRA.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.