**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 10 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

---

MESCALERO APACHE TRIBE,

      Plaintiff-Counter-
      Defendant-Appellant,

  v.

STATE OF NEW MEXICO,

      Defendant-Counter-
      Claimant-Appellee,

and

BRUCE KING, Governor of the State
of New Mexico,

      Defendant-Appellee.

\-----------------------------------------

PUEBLO OF SANTA ANA; PUEBLO
OF TESUQUE; PUEBLO OF TAOS;
PUEBLO OF POJOAQUE; PUEBLO OF
ACOMA,

      Amici Curiae.

No. 96-2156

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CIV-92-76 JC)**

---

On the briefs:[*]

Gregory M. Quinlan, John D. Wheeler, Anne-Kathryn Claassen, Fettinger, Bloom & Quinlan, P.C., Alamogordo, New Mexico, for appellant.

Tom Udall, Attorney General, Christopher D. Coppin, Assistant Attorney General, Albuquerque, New Mexico, for appellees.

Richard W. Hughes, Rothstein, Donatelli, Hughes, Dahlstrom, Cron & Schoenburg, LLP, Santa Fe, New Mexico, for amicus Pueblo of Santa Ana.

Sarah W. Barlow, Rosenfelt, Barlow, Barber, Barudin & Borg, P.A., Albuquerque, New Mexico, for amicus Pueblo of Taos.

Kevin Gover, Gover, Stetson & Williams, P.C., Albuquerque, New Mexico, for amicus Pueblo of Tesuque.

Joseph D. Little, Santa Fe, New Mexico, for amicus Pueblo of Pojoaque.

Peter C. Chestnut, Chestnut Law Offices, Albuquerque, New Mexico, for amicus Pueblo of Acoma.

_____

Before **ANDERSON, HENRY**, and **BRISCOE**, Circuit Judges.

_____

**ANDERSON**, Circuit Judge.

_____

This case began in 1992 when plaintiff and appellant, the Apache Tribe of the Mescalero Reservation, a federally-recognized Indian tribe in New Mexico,

_____

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

filed an action seeking to compel the State of New Mexico to negotiate in good faith to achieve a compact permitting Class III (casino-type) gaming on the Mescalero Reservation. Eventually, in 1995, the Tribe and the State entered into a compact ("Compact") permitting such gaming, the validity of which is an issue in this case. The present appeal is from the district court's denial of the Tribe's motion to strike the State's Eleventh Amendment immunity defense, denial of the Tribe's motion to dismiss the State's counterclaim seeking to declare the Compact invalid, and grant of summary judgment to the State on its counterclaim. We affirm.

## BACKGROUND

The Tribe's initial action in 1992 was filed pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721 ("IGRA"), which gives district courts jurisdiction over "any cause of action initiated by an Indian tribe arising from the failure of a State to enter into negotiations with the Indian tribe for the purpose of entering into a Tribal-State compact." 25 U.S.C. § 2710(d)(7)(A)(i). The State argued that such an action was barred by the Tenth and Eleventh Amendments, and the district court agreed, dismissing the Tribe's action. On appeal to this court, we reversed, holding that the State may not assert Tenth or Eleventh Amendment immunity to an action under IGRA to compel a state to negotiate in

-3-

good faith.  Ponca Tribe of Oklahoma v. Oklahoma, 37 F.3d 1422 (10th Cir. 1994), vacated, 116 S. Ct. 1410 (1996).  On remand to the district court, the State filed an answer along with a counterclaim against the Tribe, seeking a declaration that the Compact was invalid.  The State again argued it had Tenth and Eleventh Amendment immunity.

The Tribe then filed a motion to strike the State's Tenth and Eleventh Amendment defenses, as well as a Fed. R. Civ. P. 12(b)(1) motion to dismiss the State's counterclaim for lack of jurisdiction.  The State moved for summary judgment on its counterclaim.  Meanwhile, the United States Supreme Court issued its decision in Seminole Tribe of Florida v. Florida, 116 S. Ct. 1114 (1996), in which it held that Congress lacked the authority to abrogate the states' Eleventh Amendment immunity by means of the Indian Commerce Clause, U.S. Const., Art. 1, § 8, cl. 3, pursuant to which IGRA was enacted, thereby effectively overruling our Ponca Tribe decision.  Id. at 1119.  The Supreme Court did not address Tenth Amendment immunity.  Id. at 1126 n.10.  Following its decision in Seminole, the Supreme Court vacated Ponca Tribe and remanded the case to us for reconsideration in light of Seminole.[1]

---

[1]On remand, we held that "Ponca Tribe lacks jurisdiction against both the state and the governor" of Oklahoma.  Ponca Tribe of Oklahoma v. Oklahoma, 89 F.3d 690, 691 (10th Cir. 1996).

-4-

The district court then held a hearing on all outstanding motions, following which it entered an order: 1) denying the Tribe's motion to strike the State's Eleventh Amendment immunity defense; 2) granting the Tribe's motion to strike the State's Tenth Amendment immunity defense; and 3) denying the Tribe's motion to dismiss the State's counterclaim, and granting the State's motion for summary judgment on the issue of the Compact's validity, holding that the Compact was invalid. The Tribe appeals. During the pendency of this appeal, our court issued a decision, Pueblo of Santa Ana v. Kelly, 104 F.3d 1546 (10th Cir.), cert. denied, 118 S. Ct. 45 (1997), in which we held that compacts entered into by various tribes, which were virtually identical to the Compact at issue in this case, were invalid and not "in effect" under IGRA because the Governor of New Mexico lacked the authority to sign the compacts on behalf of the State. Id. at 1559.

**DISCUSSION**

Following the Supreme Court's denial of certiorari in Pueblo of Santa Ana, we issued an order in this case, directing the parties to brief the following issues: 1) the effect of the decision in Pueblo of Santa Ana upon the issues presented in, and the disposition of, this appeal; 2) whether intervening changes in New Mexico state law affect any of the issues in this case, affect the necessity of our

ruling on any of those issues, or require the court to consider certification of new state law issues to the New Mexico Supreme Court; and 3) whether this case should be stricken from the oral argument calendar and submitted on the briefs. We invited the parties to address any other issues they wished, and, of course, we have the parties' original briefs filed in this appeal. We have reviewed the briefs of the parties, as well as of amici curiae, the Pueblos of Santa Ana, Tesuque, Taos, Pojoaque and Acoma.

The Tribe argues that Pueblo of Santa Ana is not dispositive of this case "because there are still outstanding issues which were not considered by this Court in the Santa Ana case." Appellant's Supp. Br. at 2. First, the Tribe argues this case is distinguishable from Pueblo of Santa Ana because the United States is not a party to this case, as it was in Pueblo of Santa Ana. Id. The Tribe accordingly argues we must consider whether the United States is an indispensable party in whose absence the State's counterclaim must be dismissed. The Tribe also claims that the absence of the United States, against whom the Tribe lacks sovereign immunity, compels us to decide whether the Tribe's immunity has been abrogated by Congress. Other issues the Tribe argues were not addressed by Pueblo of Santa Ana are whether the political question doctrine precludes us from considering this case and "whether Congress even vested the District Court with the jurisdiction to entertain the State's counterclaim." Id.

-6-

The Tribe also claims that there are "distinctions between the sovereign immunity of New Mexico and that of Florida as they relate to the applicability of Seminole." Id. at 3. Finally, the Tribe argues that "substantial changes in New Mexico law" since our Pueblo of Santa Ana decision "suggest[s] that the Court should revisit [that] decision." Id.

The State argues that, to the extent issues in this appeal depend upon the validity of the Compact, Pueblo of Santa Ana's holding that identical compacts are invalid controls. The State further argues, however, that changes in New Mexico law—specifically, New Mexico has recently enacted legislation granting the Governor authority to enter into compacts with tribes, and the Tribe and the

State have just entered into a new compact for Class III gaming[2]—require

certification to the New Mexico Supreme Court of three questions of state law:

> 1. Is the passage of H.B. 399 the valid exercise of authority granted to the New Mexico Legislature by the New Mexico Constitution?

> 2. If H.B. 399 is valid under the New Mexico Constitution, did the tribal resolution presented by the Mescalero Tribe to Governor Johnson authorize the Governor to enter into a compact with the Tribe?

> 3. If H.B. 399 is not valid under the New Mexico Constitution, can the defects in H.B. 399 be severed from H.B. 399?

---

[2]The new gaming legislation was introduced into the New Mexico legislature as House Bill 399, and provides that the Governor has authority to enter into compacts with tribes. H.B. 399, 43rd Leg., 1st Sess. (N.M. 1997). It contains some provisions which apparently are controversial. For example, it specifies that tribes waive their sovereign immunity for tort actions. It requires tribes to pay substantial regulatory fees to the State, and requires them to enter into revenue-sharing agreements with the State pursuant to which the tribes pay 16% of their "net win" to the State.

In accordance with the new law, various tribes, including the Mescalero Tribe, entered into compacts with the State. The compacts were then forwarded to the Secretary of the Interior for his approval. Under IGRA, the Secretary can either approve or reject a compact. 25 U.S.C. § 2710(d)(8). If the Secretary does nothing within 45 days, the compact automatically goes into effect "but only to the extent the compact is consistent with" IGRA's provisions. § 2710(d)(8)(C). That is what happened in this case—the Secretary took no action, so the Tribe's Compact automatically went into effect, following publication in the Federal Register, to the extent it complied with IGRA. In allowing that to occur, the Secretary specifically stated, "[t]he Tribe and the State should be aware that the Department is particularly concerned about two provisions in the Compact that appear inconsistent with IGRA, *i.e.*, the revenue sharing provisions and the regulatory fee structure." Supplement to Appellee's Supp. Br. at attachment.

Appellee's Supp. Br. at 9. The State's argument is that if the new compact into which the Tribe and State have recently entered is valid, the Tribe's claim relating to good faith negotiation in connection with previous compacts is moot.

The district court in this case held that: 1) the Ponca Tribe holding that IGRA does not violate the Tenth Amendment is the "law of the case" and the State's reliance on the Tenth Amendment as a defense must be stricken; 2) under Seminole the State has Eleventh Amendment immunity from the Tribe's good faith negotiation claim; 3) the State did not waive its Eleventh Amendment immunity by filing a counterclaim in this case; 4) it (the court) has jurisdiction under IGRA, 25 U.S.C. § 2710(d)(7)(A)(ii), to consider the State's counterclaim challenging the validity of the Compact; 5) the Tribe's sovereign immunity does not bar the court from considering the State's counterclaim; 6) the political question doctrine does not prohibit the court from ruling on the State's counterclaim; and 7) the Compact is invalid because Governor Johnson lacked the authority to enter into the Compact on behalf of the State.

## I. United States as Indispensable Party

The Tribe argues the United States and/or the Secretary of the Interior are indispensable parties, in whose absence the State's counterclaim seeking a declaration of Compact invalidity must be dismissed. The Tribe concedes that it

did not raise this issue in the district court, but asserts that it can properly be raised anytime. We agree that the issue of indispensability can be raised at any time. See Thunder Basin Coal Co. v. Southwestern Pub. Serv. Co., 104 F.3d 1205, 1211 (10th Cir. 1997) ("[T]he issue of indispensability is one which the court has an independent duty to raise sua sponte . . . ."). However, we note that the Tribe raises the claim of indispensability only after receiving an unfavorable ruling in the district court. See Keweenaw Bay Indian Comm. v. United States, 940 F. Supp. 1139, 1143 (W.D. Mich. 1996) (observing that the "federal defendants elected . . . to wait for a decision, and now seek to claim that the State is essential after receiving a construction of the Compact with which they disagree"). We nonetheless consider the issue, and reject the Tribe's argument that the United States is indispensable.

As we have recently observed:

Determining whether an absent party is indispensable requires a two-part analysis. The court must first determine under Rule 19(a) whether the party is necessary to the suit and must therefore be joined if joinder is feasible. If the absent party is necessary but cannot be joined, the court must then determine under Rule 19(b) whether the party is indispensable.

Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr., 94 F.3d 1407, 1411 (10th Cir. 1996) (citations omitted), cert. dismissed, 117 S. Ct. 1331 (1997), cert. denied, 117 S. Ct. 1427 (1997). To determine whether a party is necessary, we consider three factors:

-10-

(1) whether complete relief would be available to the parties already in the suit, (2) whether the absent party has an interest related to the suit which as a practical matter would be impaired, and (3) whether a party already in the suit would be subjected to a substantial risk of multiple or inconsistent obligations.

Id. Assuming the United States is necessary, and cannot be joined, since it cannot be sued without consenting, we would only dismiss the State's counterclaim, as the Tribe urges us to do, if we find that the United States is also indispensable.

Rule 19(b) sets out factors for determining whether a person or entity is indispensable:

[F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). We have recognized that:

[T]he Supreme Court requires a court addressing the issue for the first time on appeal to view the Rule 19 factors entirely from an appellate perspective, considering a victorious plaintiff's interest in preserving his judgment, the defendant's failure to assert his interest, the interest of the outsider, and the interest of the courts and society in judicial efficiency.

Enterprise Management Consultants, Inc. v. United States, 883 F.2d 890, 894 (10th Cir. 1989) (citing Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 109-11 (1968)); see also 7 Charles Alan Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 1609 (2d ed. 1986).

The Tribe's argument is that the United States is indispensable to a determination of the validity of a compact purportedly entered into by the State and the Tribe. We disagree. The United States is not a party to the Compact; while Secretary Babbitt approved the Compact, that approval, as we held in Pueblo of Santa Ana, did not and, under IGRA, could not, alter its validity or non-validity under state law. If we affirm the district court's determination that the Compact is invalid under state law, the United States cannot later challenge that conclusion. We perceive no prejudice to anyone from the absence of the United States, and the subject of the counterclaim—the validity of the Compact—was fully and fairly presented without the presence of the United States as a party. Moreover, viewed from the appellate perspective, the State has won on the issue of the Compact's validity, neither the Tribe nor the United States heretofore indicated that the presence of the United States was necessary in this case, and the interests of judicial efficiency counsel strongly against dismissing this action at this point. Accordingly, the absence of the United States as a party does not require dismissal of the State's counterclaim.

## II. **Applicability of Seminole**

The Tribe also argues that there are "distinctions between the sovereign immunity of New Mexico and that of Florida as they relate to the applicability of

-12-

<u>Seminole Tribe of Florida v. Florida</u>, 116 S. Ct. 1114 (1996) to this case."

Appellant's Supp. Br. at 3.  <u>Seminole</u> held that Congress lacked the authority,

under the Indian Commerce Clause, to abrogate the states' Eleventh Amendment

immunity, "and therefore [25 U.S.C.] § 2710(d)(7) cannot grant jurisdiction over

a State that does not consent to be sued."  <u>Seminole</u>, 116 S. Ct. at 1119.  The

Tribe argues that Florida's sovereign immunity "is completely intact," with a few

statutory exceptions.  Appellant's Br. at 11.  New Mexico, by contrast, judicially

abolished its sovereign immunity and, the Tribe argues, has only reinstated it

statutorily in a few select areas.  Thus, the Tribe asserts that because New

Mexico's sovereign immunity is narrower than Florida's, New Mexico lacks

Eleventh Amendment immunity from a good faith negotiation claim under IGRA.

The Tribe's argument confuses general state sovereign immunity and

Eleventh Amendment immunity.  As the Supreme Court has stated:

> Although a State's general waiver of sovereign immunity may subject
> it to suit in state court, it is not enough to waive the immunity
> guaranteed by the Eleventh Amendment.  As we explained just last
> Term, "a State's constitutional interest in immunity encompasses not
> merely *whether* it may be sued, but *where* it may be sued."  Thus, in
> order for a state statute or constitutional provision to constitute a
> waiver of Eleventh Amendment immunity, it must specify the State's
> intention to subject itself to suit in *federal court*.

<u>Atascadero State Hosp. v. Scanlon</u>, 473 U.S. 234, 241 (1985) (citation omitted)

(quoting <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 99 (1984));

<u>see also</u> <u>Sherman v. Curators of the Univ. of Missouri</u>, 16 F.3d 860, 862 n.2, 864

n.5 (8th Cir. 1994); <u>Richins v. Indus. Const., Inc.</u>, 502 F.2d 1051, 1055 (10th Cir. 1974). The fact that New Mexico judicially abolished general common-law sovereign immunity, and then, by statute, reinstated it in selected areas does not affect whether New Mexico enjoys Eleventh Amendment immunity from actions in federal court.[3] <u>See</u> <u>Palotai v. University of Md. College Park</u>, 959 F. Supp. 714, 719 (D. Md. 1997) ("[A] general waiver of sovereign immunity is not a waiver of a State's immunity from federal-court jurisdiction."). <u>Seminole</u> applies and requires us to affirm the district court's denial of the Tribe's motion to strike the State's Eleventh Amendment immunity defense.[4]

---

[3]Among the statutes to which the Tribe points as indicating that the State is only immune from suit in limited areas is the New Mexico Tort Claims Act, N.M. Stat. Ann. §§ 41-4-1 to -29. However, the Act specifically states that it shall not "be construed . . . as a waiver of the state's immunity from suit in federal court under the eleventh amendment to the United States constitution." N.M. Stat. Ann. § 41-4-4(F), letter from Bruce Babbitt, Sec. of Int., to Gary Johnson, Gov. of N.M. (Aug. 23, 1997).

[4]Although the Tribe did not raise the issue in the district court, that court on its own considered whether the State waived its Eleventh Amendment immunity by filing a counterclaim. The court held it did not. We agree.

"A state may waive its Eleventh Amendment immunity and consent to suit in federal court." <u>Johns v. Stewart</u>, 57 F.3d 1544, 1553 (10th Cir. 1995). However, we apply "a stringent test" to determine if such a waiver has occurred. <u>Id.</u> The waiver must be "unequivocal" which means "'only where stated "by the most express language or by such overwhelming implication from the text [of a state statutory or constitutional provision] as [will] leave no room for any other reasonable construction."'" <u>Id.</u> (quoting <u>Atascadero State Hosp. v. Scanlon</u>, 473 U.S. 234, 239-40 (1985) (quoting <u>Edelman v. Jordan</u>, 415 U.S. 651, 673 (1974))). We conclude that the State did not waive its Eleventh Amendment immunity by filing a counterclaim in the circumstances of this case. <u>See</u> <u>Santee Sioux Tribe of Nebraska v. Nebraska</u>, 121 F.3d 427, 431 (8th Cir. 1997)

(continued...)

-14-

## III.  Tribal Sovereign Immunity

The Tribe also argues that the issue of whether Congress in IGRA validly abrogated tribal sovereign immunity was not presented in Pueblo of Santa Ana because the United States was a party and the Tribe clearly lacked sovereign immunity against the United States.  In the Tribe's view, Congress did not unequivocally abrogate its immunity, so the district court lacked jurisdiction over the State's counterclaim seeking a declaration as to whether the State validly entered into the Compact.  The district court, relying upon Maxam v. Lower Sioux Indian Community of Minn., 829 F. Supp. 277 (D. Minn. 1993), held that the Tribe had waived its sovereign immunity by engaging in gambling pursuant to a compact entered into under IGRA.[5]

---

[4](...continued) ("[T]he Nebraska assistant attorney general's conduct in answering the complaint and filing a counterclaim does not constitute a waiver of Nebraska's Eleventh Amendment immunity."); American Fed'n of State, County and Mun. Employees v. Corrections Dep't, 783 F. Supp. 1320, 1327 (D.N.M. 1992) (holding that state did not waive Eleventh Amendment immunity by removing case to federal court); see also National R.R. Passenger Corp. v. Rountree Transp. and Rigging, Inc., 896 F. Supp. 1204, 1206-07 (M.D. Fla. 1995) (noting that courts which find waiver by filing and prosecuting counterclaims still require state defendants to "announce their waiver of Eleventh Amendment immunity unequivocally.").  The State has continued to assert Eleventh Amendment immunity, which is hardly consistent with the kind of unequivocal waiver necessary to waive that immunity.

[5]The Tribe apparently conceded in the court below that Congress at least partially abrogated tribal immunity by means of IGRA, but it denied that Congress totally abrogated tribal sovereign immunity for all suits having Indian gaming as their subject matter.  As the district court observed, the Tribe failed to articulate how a court can

(continued...)

"Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers."  Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978).  That immunity may be abrogated by Congress or waived, but such waiver "'cannot be implied but must be unequivocally expressed.'"  Id. (quoting United States v. Testan, 424 U.S. 392, 399 (1976)).  Section 2710(d)(7)(A)(ii) gives district courts jurisdiction over "any cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact entered into."  Seminole held that Congress unmistakably intended to abrogate the states' Eleventh Amendment immunity by means of IGRA.  Its intent to abrogate tribal sovereign immunity by section 2710(d)(7)(A)(ii) when a state seeks to "enjoin" gaming activities "conducted in violation of any Tribal-State compact entered into" seems equally clear and unmistakable.  And although Seminole held that Congress lacked the authority to abrogate states' *Eleventh Amendment* immunity  through the Indian Commerce Clause, tribal sovereign immunity does not stem from the Eleventh Amendment.

While there is sparse case law on the issue, it appears the majority supports the view that IGRA waived tribal sovereign immunity in the narrow category of

---

[5](...continued)
determine "which subsets of gaming lawsuits fall within a federal court's jurisdiction." Appellant's Br. at Addendum, Mem. Op. at 12.

cases where compliance with IGRA's provisions is at issue and where only declaratory or injunctive relief is sought. See Montgomery v. Flandreau Santee Sioux Tribe, 905 F. Supp. 740, 745 (D.S.D. 1995) ("The Court has subject matter jurisdiction to consider whether defendants [tribes] have complied with [IGRA]."); Calvello v. Yankton Sioux Tribe, 899 F. Supp. 431, 438 (D.S.D. 1995) ("[F]ederal courts may find a waiver of tribal sovereign immunity for the purpose of enforcing the provisions of the IGRA where prospective injunctive relief, and not monetary relief, is sought."); Maxam, 829 F. Supp. at 281 (holding that, by engaging in gaming, tribe waives sovereign immunity for narrow purpose of determining compliance with IGRA); Ross v. Flandreau Santee Sioux Tribe, 809 F. Supp. 738, 745 (D.S.D. 1992) ("Engaging in gaming pursuant to the IGRA constitutes an express waiver of sovereign immunity on the issue of compliance with the IGRA."); Cohen v. Little Six, Inc., 543 N.W.2d 376, 380 (Minn. Ct. App. 1996) ("LSI's operation of a gaming hall subjects it to a non-tribal court's authority to enforce compliance with the IGRA, not claims for money damages."), aff'd 561 N.W.2d 889 (Minn. 1997), petition for cert. filed, 65 U.S.L.W. 3839 (June 9, 1997) (No. 96-1962). But see Davids v. Coyhis, 869 F. Supp. 1401,

1408-09 (E.D. Wis. 1994) (explicitly rejecting the reasoning of <u>Ross</u> and

<u>Maxam</u>).[6]

## IV. **Political Question**

The Tribe also argues that the resolution of the State's counterclaim

involves a non-justiciable political question. This argument was not made in

<u>Pueblo of Santa Ana</u> and that decision demonstrates why the argument fails. "A

controversy is nonjusticiable—i.e., involves a political question—where there is a

'textually demonstrable constitutional commitment of the issue to a coordinate

political department; or a lack of judicially discoverable and manageable

standards for resolving it. . . .'" <u>Clinton v. Jones</u>, 117 S. Ct. 1636, 1647 n.34

(1997) (quoting <u>Baker v. Carr</u>, 369 U.S. 186, 217 (1962)). We resolved the very

---

[6]Several courts have also distinguished <u>Ross</u> and <u>Maxam</u> by refusing to find a waiver of sovereign immunity when, although gaming was generally at issue in the case, the specific action asked the court to determine tribal membership, a subject which has traditionally been exclusively within a tribe's domain. See <u>Lincoln v. Saginaw Chippewa Indian Tribe of Michigan</u>, 967 F. Supp. 966, 967 (E.D. Mich. 1997) ("[T]his court finds that it lacks jurisdiction to hear what is essentially a membership dispute between Plaintiffs and the Tribe."); <u>Smith v. Babbitt</u>, 875 F. Supp. 1353, 1360 (D. Minn. 1995) (holding that it lacked jurisdiction over "an internal tribal membership dispute[] [which was] not a dispute over compliance with IGRA, and does not belong in federal court"), <u>aff'd</u>, 100 F.3d 556 (8th Cir. 1996), <u>cert. denied</u>, 118 S. Ct. 46 (1997). Similarly, in <u>Federico v. Capital Gaming Int'l, Inc.</u>, 888 F. Supp. 354 (D.R.I. 1995), the court held a tribe's sovereign immunity was not waived or abrogated for a breach of contract action involving the provision of lobbying services to help a tribe qualify to conduct class III gaming.

issue—the validity of the Compact—in Pueblo of Santa Ana which the Tribe claims is nonjusticiable. That opinion explains adequately the basis upon which this court resolved that claim.

## V. Jurisdiction Over Counterclaim

The Tribe argues that the plaintiffs in Pueblo of Santa Ana "conceded" that the court had jurisdiction to consider the issue of the validity of the compact, but the Tribe in this case is unwilling to make that concession with respect to the State's counterclaim. The plaintiffs' purported "concession" in Pueblo of Santa Ana is irrelevant. We have an independent duty to satisfy ourselves that we have jurisdiction over a case. Phelps v. Hamilton, 122 F.3d 1309, 1315-16 (10th Cir. 1997). We satisfied that duty in Pueblo of Santa Ana, and the same result obtains here. As the district court held, 25 U.S.C. § 2710(7) conferred jurisdiction over the State's counterclaim.

## VI. Changes in New Mexico Law

Both the State and the Tribe argue that the recent legislation passed in New Mexico has some impact on this case. The State asks us to certify questions concerning the new legislation to the New Mexico Supreme Court, and the Tribe argues that the legislation should cause us to revisit our decision in Pueblo of

<u>Santa Ana</u>.  We reject both arguments.  The new legislation is, quite simply, not before us in this appeal.  As amici argue, there is no case or controversy before us concerning that legislation or the compacts which it authorized.  Nor do events since <u>Pueblo of Santa Ana</u> require us to reconsider that decision.


## CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court.