**WYANDOTTE NATION, Plaintiff,**

**v.**

**CITY OF KANSAS CITY, KANSAS, et al., Defendants.**

**Civil Action No. 01–2303–CM.**

United States District Court, D. Kansas.

May 3, 2002.

David McCullough, Oklahoma City, OK, Sam L. Colville, Holman Hansen Colville & Coates, PC, Kansas City, MO, for Wyandotte Nation.

Henry E. Couchman, Jr., Harold T. Walker, Unified Government of Wyandotte County/KCK, Kansas City, KS, for Kansas City, Kansas.

George E. Feldmiller, Stephen M. Bledsoe, David L. Marcus, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Shaw, LLP, Kansas City, MO, Janice M Schneider, Elliot A Milhollin, Latham & Watkins, Washington, DC, for International Paper Co.

Mark S. Carder, Stinson Morrison Hecker LLP, Kansas City, MO, for Owens Corning.

Bradley L. Farney, Overland Park, KS, Reid F. Holbrook, Holbrook, Heaven & Osborn P.A., Kansas City, KS, Lewis A. Heaven, Jr., Holbrook, Heaven & Osborn, P.A., Merriam, KS, for Robert M. Modeer, Emily W. Modeer.

Douglas R. Dalgleish, Lathrop & Gage L.C., Kansas City, MO, Todd E. Hilton, Stueve Helder Siegel LLP, Kansas City, MO, for General Motors Corp.

Brian R. Johnson, Office of Attorney General, Topeka, KS, for State of Kansas.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

Pending before the court is the Response by Counter-Claimants Robert M. Modeer and Emily W. Modeer ("the Modeers") to Plaintiff's Stipulation of Dismissal Without Prejudice Pursuant to Rule 41(a)(2) (Doc. 40). Also pending is the State of Kansas ("Kansas")'s Motion for Limited Intervention to Dismiss for Failure to Join an Indispensable Party and for Lack of Subject Matter Jurisdiction (Doc. 29). The court also has reviewed defendant International Paper's Statement of Support for Kansas's Motion to Dismiss, in which defendant International Paper moves the court to dismiss for failure to join Kansas and the United States as in-

dispensable parties (Doc. 35). The court's order to plaintiff to show cause why defendants William J. Willhite and John Does # 1–200 should not be dismissed (Doc. 32) and plaintiff's response to that order (Doc. 36) also are pending. Finally, the requests for oral argument by defendants the Modeers and by movant Kansas are pending.

As set forth below, the court finds that it may not dismiss the action pursuant to Rule 41(a)(2) because counterclaimants the Modeers have objected to the stipulation of dismissal filed by plaintiff. The court grants Kansas's motion to intervene for the limited purpose of filing a motion to dismiss for failure to join an indispensable party and for lack of subject matter jurisdiction. The court denies Kansas's motion to dismiss for failure to join Kansas as an indispensable party and for lack of subject matter jurisdiction. The court also denies defendant International Paper's motion to dismiss for failure to join the United States as an indispensable party. Further, the court finds that plaintiff has failed to demonstrate good cause why defendants William J. Willhite and John Does # 1–200 should not be dismissed, and orders plaintiff to serve these defendants by May 17, 2002. The court denies the requests for oral argument made by defendants the Modeers and by movant Kansas.

## I. Facts

Plaintiff Wyandotte Nation, a federally recognized Indian tribe, seeks a declaratory judgment quieting title to land located in Kansas City, Kansas.[1] Defendants include the Unified Government of Kansas City and Wyandotte County, Kansas ("the city"), and several private landowners.[2] Plaintiff argues that a treaty executed in 1855 ("the 1855 treaty") between plaintiff and the United States did not extinguish plaintiff's title to the parcels of land at issue. Plaintiff claims to have held a continuous interest in the land since the ratification of a treaty between plaintiff and the Delaware tribe in 1848. Consequently, plaintiff seeks a declaratory judgment that it holds superior title to the lands at issue. Further, plaintiff seeks monetary damages for trespass by defendants and an order enjoining defendants from further trespass. The court will address each pending motion in turn.

## II. Response by Counter-Claimants Robert M. Modeer and Emily W. Modeer to Plaintiff's Stipulation of Dismissal Without Prejudice Pursuant to Rule 41(a)(2) (Doc. 40)

Plaintiff filed a Stipulation for Order of Dismissal pursuant to Federal Rule of

1. For purposes of clarification, and without expressing any opinion as to the issue of ultimate ownership, the court notes that the properties at issue and their record owners, as set forth in plaintiff's complaint, are: (1) the Huron Cemetery Property, which is held in trust by the United States for the benefit of plaintiff and which plaintiff argues encompasses portions of Seventh Street and Minnesota; (2) parcels 903603, 209800, 082192, 216204, 901001, and 209800, of which the City of Kansas City, Kansas is record owner; (3) parcel 216206, of which the United States is record owner; (4) parcel 903512, of which defendant International Paper is record owner; (4) parcel 903500, of which defendant Owens Corning is record owner; (5) parcel 900602, of which defendant Owens Corning is record owner; (6) parcel 900606, of which defendant William J. Willhite is record owner; (7) parcel 900709, of which defendants the Modeers are record owners; (8) parcel 900500, of which defendant General Motors is record owner; and (9) additional parcels, of which "John Does 1–150" are record owners.

2. By referring to the record title holders as "landowners," the court expresses no judgment as to the ultimate issue of ownership. The court also notes that plaintiff and the United States entered a stipulation of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1), terminating the United States as a party (Doc. 27).

Civil Procedure 41(a)(2), in which plaintiff indicated it had reached a settlement agreement with defendant the Unified Government of Kansas City and Wyandotte County, Kansas (defendant Kansas City, Kansas).[3] Plaintiff states that pursuant to the settlement agreement, plaintiff agreed to stipulate that the action be dismissed without prejudice as to all parties (Doc. 39). Defendants the Modeers object to the dismissal on the grounds that (1) they have filed counterclaims which cannot remain pending for independent adjudication by the court if the action were dismissed without prejudice, and (2) plaintiff's filing of this action has placed a "permanent cloud" on their title and has rendered their property unmarketable. In their answer (Doc. 28), defendants the Modeers counterclaimed to recover from plaintiff the value of any improvements they had made to the land, and further sought to quiet title to the property and to recover costs and attorneys' fees incurred in defending the action.

Plaintiff, in its response to the objection by defendants the Modeers to the stipulation of dismissal (Doc. 44), contends that its sovereign immunity bars the counterclaims. Plaintiff also states that because the Modeers' claim for reimbursement arises under the court's supplemental jurisdiction, the court should decline to exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c). In defendants the Modeers' reply (Doc. 47), they counter that plaintiff has waived its sovereign immunity as to the quiet title counterclaim by bringing the action to quiet title.

As set forth below, the court finds that plaintiff has waived its sovereign immunity as to the quiet title counterclaim. The quiet title counterclaim is thus within the court's jurisdiction, and cannot, within the meaning of Rule 41(a)(2), remain open for independent adjudication. Moreover, the court finds it is without jurisdiction to hear the reimbursement counterclaim due to plaintiff's sovereign immunity. Further, the quiet title counterclaim cannot remain open for independent adjudication. As a result, the court finds it must retain the case pursuant to Federal Rule of Civil Procedure 41(a)(2).

### A. Rule 41(a)(2)

Federal Rule of Civil Procedure 41(a)(2) provides that:

> [A]n action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection **unless** the counterclaim can remain pending for independent adjudication by the court.

Fed.R.Civ.P. 41(a)(2) (emphasis added). Because defendants the Modeers object to plaintiff's stipulation of dismissal, Rule 41(a)(2) precludes the court from dismissing the case unless the Modeers' counterclaims can remain pending for independent adjudication. Plaintiff raises a threshold issue, however, challenging whether the court has jurisdiction over the counter-

3. Kansas has filed a motion opposing plaintiff's stipulation of dismissal without prejudice (Doc. 41). This pleading is not properly before the court. As set forth in this opinion, Kansas moved to intervene for the limited purpose of filing a motion to dismiss. Kansas has never moved the court to recognize it as a proper litigant for the purpose of opposing plaintiff's stipulation of dismissal. However, as set forth below, the court declines to issue an order dismissing the case over the objections of defendants the Modeers. Moreover, the court grants Kansas's motion to intervene for the limited purpose of filing a motion to dismiss for failure to join a party under Rule 19 and for lack of subject matter jurisdiction.

claims. Specifically, plaintiff contends that the court may not exercise jurisdiction because plaintiff has not waived its tribal sovereign immunity as to the counterclaims. Further, plaintiff argues that the court should decline to exercise its supplemental jurisdiction over the claim for reimbursement. The court will address each of the parties' claims in turn.

**B. Sovereign Immunity**

The court must address whether plaintiff has waived its sovereign immunity as to defendants the Modeers' quiet title and reimbursement counterclaims. As set forth below, the court finds that plaintiff has waived its sovereign immunity as to the quiet title counterclaim, but has not waived its sovereign immunity as to the reimbursement counterclaim.

"Indian tribes are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories." *Okla. Tax. Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991) (quoting *Cherokee Nation v. Georgia*, 30 U.S. 1 (5 Pet. 1), 8 L.Ed. 25 (1831)). "Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." *Id.* at 509–10, 111 S.Ct. 905 (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978)). This tribal immunity extends to immunity from counterclaims and cross-claims. *United States v. U.S. Fidelity & Guar. Co.*, 309 U.S. 506, 512, 60 S.Ct. 653, 84 L.Ed. 894 (1940).

**1. Quiet Title Counterclaim**

Defendants the Modeers contend that the tribe waived its sovereign immunity as to the quiet title counterclaim by requesting the court to determine the property rights at issue in the case through its quiet title action. In arguing that the tribe has waived its immunity as to this counterclaim, defendants the Modeers point to an Eighth Circuit decision which addressed a closely analogous factual setting to the one at bar. In *Rupp v. Omaha Indian Tribe*, the court held that the tribe waived its sovereign immunity as to a quiet title counterclaim. 45 F.3d 1241, 1245 (8th Cir.1995). The court noted that by filing suit to quiet title in the lands at issue in the case and by affirmatively requesting the district court to order the defendants to "appear and answer this Complaint setting forth in full their alleged sources of title, if any, in and to the lands," the tribe had "consented to and assumed the risk of the court determining that the Tribe did not have title to the disputed tracts." 45 F.3d 1241, 1245 (8th Cir.1995).

In holding the tribe had waived its sovereign immunity as to the counterclaim, the Eighth Circuit stated: "[w]hen the Tribe filed this suit, it consented to and assumed the risk of the court determining that the Tribe did not have title to the disputed tracts. Moreover, requesting equitable relief from the federal district court constitutes an appeal to the sound discretion of the court; that a tribe is the plaintiff is immaterial." *Rupp v. Omaha Indian Tribe*, 45 F.3d at 1245 (quoting *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1333 (10th Cir.1982)). "By requesting equitable relief, the Tribe consented to the district court exercising its equitable discretion to resolve the status of the disputed lands. To hold that the district court could exercise its discretion to quiet title in favor of the plaintiff (the Tribe) but not the defendant (Rupp and Henderson) would be anomalous and contrary to the court's broad equitable powers." *Id.*[4]

4. In *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, the Supreme Court held that a tribe did not waive its sovereign immunity by filing an ac-

In the case pending before the court, the tribe did not specifically request the court to order the defendants to state whether they also claimed title to the lands. However, the tribe's action in filing a quiet title suit necessarily places before the court the issue of whether plaintiff or defendants hold title to the land. Moreover, although the Tenth Circuit has not had occasion to decide the same issue as that before the Eighth Circuit in *Rupp,* it has consistently recognized the doctrine of equitable recoupment and applied it to Indian tribes. In *Jicarilla Apache Tribe v. Andrus,* the Tenth Circuit recognized that because tribal sovereign immunity "is generally coextensive with that of the United States," tribes may waive sovereign immunity as to claims brought in recoupment against actions brought by the tribe. 687 F.2d at 1344–45.

Equitable recoupment is an exception to the doctrine of sovereign immunity which recognizes that by bringing a claim, a state or tribe necessarily waives immunity for matters "arising out of the same transaction or occurrence" which is the subject matter of the suit, to the extent the counterclaims do not seek relief "different in kind or nature" or "exceeding the amount" of the relief sought by the state or tribe. *Id.* at 1344 (citing *Frederick v. United States,* 386 F.2d 481, 488 (5th Cir. 1967); *FDIC v. Hulsey,* 22 F.3d 1472, 1487 (10th Cir.1994)). The *Jicarilla* court, while validating the doctrine of equitable recoupment, ultimately did not recognize a waiver by the tribe involved because the counterclaims at issue did not meet the standard of "arising out of the same transaction" as the claims in the tribe's complaint. *Id.* at 1345. The counterclaims were "in the nature of a claim for wrongful or malicious prosecution," and consequently were not related to the underlying claims in the tribe's case, *i.e.,* whether the Secretary of the Interior improperly advertised the sale of oil and gas leases on reservation land, and whether the Secretary failed to comply with the National Environmental Policy Act. *Id.* & n. 15.

In this case, by asking the court to quiet title, plaintiff necessarily submits for the court's consideration the question of whether defendants have title to the land. This court may not award the relief plaintiff seeks—a declaratory judgment quieting title in the tribe—without also determining the quality of title held by defendants the Modeers. The quiet title counterclaim brought by the Modeers is not an attempt to subject the plaintiff to greater liability or obligations beyond those which plaintiff already has sought the court to adjudicate by bringing a quiet title action in the first place. Thus, equitable recoupment provides that plaintiff has waived its sovereign immunity as to the quiet title counterclaim. The court is persuaded by the Eighth Circuit's holding in *Rupp* that by bringing a quiet title action, a tribe necessarily subjects itself to counterclaims brought by defendants who seek to have title quieted

tion in which it sought injunctive relief in connection with Oklahoma's effort to collect past due taxes on cigarettes sold at a convenience store owned and operated by the tribe. 498 U.S. at 509–510, 111 S.Ct. 905. The Court thus held that Oklahoma could not maintain a counterclaim to enforce the tax assessment and enjoin the tribe from making future sales without collecting sales taxes. *Id.* This court is persuaded by the *Rupp* court's analysis in distinguishing *Oklahoma Tax Commission:* "The tribe in *Oklahoma Tax Commission* only requested the district court to enjoin the state from collecting taxes from the tribe; it did not request the court to determine whether or not any taxes were in fact due and owing. Whereas, here the Tribe affirmatively requested the district court to resolve the ownership of the disputed land by asking the defendants to assert any right, title, interest or estate they may have in the disputed lands." *Id.* (citations omitted).

in them. The Tenth Circuit has applied equitable recoupment, the doctrine upon which the Eighth Circuit relied in its holding in *Rupp*.[5] The court thus finds that it has subject matter jurisdiction over defendants the Modeers' quiet title counterclaim.

### 2. Reimbursement Counterclaim

Having found that it has jurisdiction over defendants the Modeers' quiet title counterclaim, the court turns to the question of whether it may independently adjudicate the Modeers' claim for reimbursement for improvements they have made to the land. Applying the test from *Jicarilla,* the court finds that the Modeers may not maintain this counterclaim against the tribe. Defendants contend the court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(a), because it forms part of the same "case or controversy" as the plaintiff's claims, which arise under the original jurisdiction of the court pursuant to 28 U.S.C. § 1362. However, plaintiff has not waived its sovereign immunity as to the reimbursement counterclaim. Although the reimbursement action "arises out of the same transaction or occurrence" which is the subject matter of the suit, it clearly is "different in kind and nature" from the quiet title and trespass claims brought by the tribe, and "exceeds the amount of relief" sought by the tribe. *Jicarilla,* 687 F.2d at 1345. The court thus finds that under *Jicarilla* and *Rupp,* the tribe has not waived its immunity as to the reimbursement counterclaim. Because the court has no jurisdiction over defendants the Modeers' counterclaim for reimbursement, the court dismisses this claim. Because the quiet title claim is outstanding, however, the court must consider whether it may enter the stipulation of dismissal of the case pursuant to Rule 41(a)(2) over the Modeers' objection.

5. The court notes that in *Mescalero Apache Tribe v. New Mexico,* the Tenth Circuit held that New Mexico did not waive its Eleventh Amendment immunity by filing a counterclaim against the plaintiff tribe. 131 F.3d 1379, 1385 n. 4 (10th Cir.1997). In *Mescalero,* the tribe brought an action seeking to compel New Mexico to negotiate in good faith in the tribe's efforts to secure a compact permitting Class III gaming on the reservation. *Id.* at 1380. After the compact was signed, New Mexico brought a counterclaim asserting that the compact was invalid. *Id.* The court stated that waiver of Eleventh Amendment immunity "must be 'unequivocal' which means 'only where stated by the most express language or by such overwhelming implication from the text [of a state statutory or constitutional provision] as [will] leave no room for any other reasonable construction.'" *Id.* (quoting *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 239–40, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985), and citing cases). *Mescalero,* however, is distinguishable from the case presented here because there was no basis for a finding of equitable recoupment in that case. In *Mescalero,* the state was a defendant in the action and brought a counterclaim which would have been "different in kind or nature" from the relief initially sought by the tribe. Such a factual posture is different from that of the case at bar, in which the plaintiff's filing of a quiet title action necessarily requires the court to determine the issue of ownership, thus presenting a situation where equitable recoupment applies. Moreover, the Tenth Circuit has continued to recognize equitable recoupment after *Atascadero* was decided. *See Hulsey,* 22 F.3d at 1486 ("The district court has subject matter jurisdiction over claims in recoupment brought against an agency of the United States."). *Mescalero* and *Atascadero State Hospital's* requirement of a clear statement before finding a waiver of Eleventh Amendment immunity as to defendants' quiet title counterclaim thus does not preclude the court from finding that a state or tribal plaintiff waives its Eleventh Amendment immunity as to counterclaims brought in recoupment.

### C. Independent Adjudication

[5] Federal Rule of Civil Procedure 41(a)(2) precludes the court from dismissing a case if a counterclaimant objects to dismissal, unless the court may independently adjudicate the counterclaim. Here, the quiet title counterclaim cannot be independently adjudicated. Defendants the Modeers acknowledge that they could not bring this counterclaim in an independent action due to the plaintiff's sovereign immunity. As noted, plaintiff has waived its sovereign immunity as to the quiet title counterclaim **only** because it invoked the court's equitable powers by bringing a quiet title claim. Defendants could not, however, affirmatively sue plaintiff to quiet title due to plaintiff's sovereign immunity.

The court therefore finds that dismissal of the action over counterclaimants the Modeers' objection pursuant to Rule 41(a)(2) would be improper. The court has jurisdiction over defendants the Modeers' quiet title counterclaim. Further, the counterclaim cannot remain pending for independent adjudication. Rule 41(a)(2) thus requires that the court decline to enter the stipulation of dismissal. Having determined that dismissal of the action pursuant to plaintiff's stipulation of dismissal is inappropriate, the court turns to the additional motions pending in this action.[6]

## III. Kansas's Motion for Limited Intervention (Doc. 29)

Kansas has moved to intervene in this suit pursuant to Federal Rule of Civil Procedure 24(a)(2) for the limited purpose of moving to dismiss the case for failure to join Kansas as an indispensable party and for lack of subject matter jurisdiction. Plaintiff did not file a response to Kansas's motion to intervene and to dismiss. As set forth below, the court grants Kansas's motion for limited intervention.

### A. Standard

Federal Rule of Civil Procedure 24(a)(2) provides that an applicant may intervene as a matter of right if (1) the application is timely; (2) the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) the applicant's interest may as a practical matter be impaired or impeded if the action is disposed of in the party's absence; and (4) the applicant's interest is not adequately represented by the existing parties. *Utah Ass'n of Counties v. Clinton,* 255 F.3d 1246, 1249 (10th Cir.2001).

#### 1. Timeliness

[6] Rule 24 does not impose an actual time limit for the filing of motions to intervene, but instead permits a district court to exercise its discretion in determining timeliness. A decision by the court regarding Kansas's motion to dismiss at this point in the litigation, where the parties have not yet commenced discovery, would not prejudice the parties or waste judicial resources. The court finds Kansas's motion is timely.

#### 2. Interest Relating to the Property at Issue and Impairment of Interest

[7] A party seeking to intervene as a matter of right must claim "an interest relating to the property or transaction which is the subject of the action." Fed. R.Civ.P. 24(a)(2). The interest must be "direct, substantial, and legally protectable." *Utah Ass'n,* 255 F.3d at 1251 (citations omitted). The interest inquiry is "highly fact-specific," and "is primarily a

6. Finding a sufficient basis to retain the case under Rule 41(a)(2), the court finds it is unnecessary to consider defendants the Modeers' argument that the litigation has placed a "permanent cloud" on their title.

practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Coalition of Ariz./N.M. Counties for Stable Econ. Growth v. Dep't of Interior,* 100 F.3d 837, 841 (10th Cir. 1996) (citations omitted). Moreover, the Tenth Circuit "has tended to follow a somewhat liberal line in allowing intervention." *Sanguine, Ltd. v. U.S. Dep't of Interior,* 736 F.2d 1416, 1420 (10th Cir. 1984), *quoted in Coalition,* 100 F.3d at 841.

Kansas seeks permission to intervene to protect interests which arise from its sovereign powers over the lands which are currently held by private and municipal defendants. Kansas contends that if plaintiff prevails and title to the land is quieted in the tribe, Kansas would lose the taxation, regulatory, and jurisdictional powers it exercises over these lands. Land held in trust by the federal government on behalf of Native American tribes is exempted from state or local taxation by 25 U.S.C. § 465, and from local zoning and regulatory requirements pursuant to 25 C.F.R. § 1.4(a). Further, it is not subject to state criminal or civil jurisdiction, absent consent of the tribe. 25 U.S.C. §§ 1321(a), 1322(a). *Accord Conn. ex. rel. Blumenthal v. U.S. Dep't of Interior,* 228 F.3d 82, 85–86 (2d Cir.2000), *cert. denied,* 522 U.S. 1007, 121 S.Ct. 1732, 149 L.Ed.2d 657 (2001). Further, Kansas contends that a tribal victory would deprive Kansas of its powers of escheat and eminent domain over the private tracts of land at issue in the suit.[7]

The court finds that Kansas has articulated a direct, substantial, and legally protectable interest. The state currently exercises taxation, regulatory, and jurisdictional powers over land which is held by private landowners and by the City of Kansas City, Kansas. These interests are clearly at stake in the litigation because if plaintiff succeeds on the merits, the state would lose such interests.[8]

### 3. Adequacy of Representation

█ Having found that Kansas has articulated interests that could be impaired depending on the outcome of this litigation, the court must consider whether these interests are adequately represented by the existing parties. The court thus examines the posture of the parties currently in the lawsuit. Although the state may share an

7. The court declines to address whether the state's claimed interests in escheat and eminent domain suffice as grounds for intervention. Kansas cites no authority in which courts have held these interests sufficient under Rule 24. The court locates adequate grounds for permissive intervention in the taxation, regulatory, and jurisdictional powers which the state is currently exercising over the lands at issue.

8. The court's review of other decisions has revealed similar findings by courts in closely analogous factual settings. The United States District Court for the Southern District of Illinois granted Illinois's motion to intervene under Rule 24(a)(2) in a lawsuit in which an Indian tribe argued that a treaty between the tribe and the United States did not extinguish the tribe's title to certain land. *Miami Tribe of Okla. v. Walden,* 206 F.R.D. 238, 243–44 (S.D.Ill.2001). Illinois sought intervention because of its sovereign and jurisdictional interests over the land in question, including its taxation and regulatory activities. *Id.* at 239–40. The court found intervention was appropriate under Rule 24(a)(2), stating that "[a] governmental body's sovereign interest is the type of direct, significant, and legally protectable interest that could justify intervention under Rule 24(a)(2)." *Id.* at 242. Similarly, the Ninth Circuit reversed a district court decision denying the city's motion for intervention under Rule 24(a)(2), finding that the taxation and regulatory interests asserted by the city were sufficient to warrant intervention where the plaintiff tribe sought to restore certain property to Indian trust status. *Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States,* 921 F.2d 924, 927 (9th Cir.1990).

interest with the private landowners and with the city in having title quieted in the record owners rather than in the tribe, none of the parties in the lawsuit share the nature of the interests claimed by the state. The state's taxation, regulatory, and jurisdictional interests are unique and are not truly represented by either the private landowners or by the city. Consequently, the court finds that these interests are not adequately represented by the parties currently in the lawsuit. The court thus permits Kansas to intervene pursuant to Rule 24(a)(2). Having determined that Kansas may intervene, the court turns to Kansas's motion to dismiss.

## IV. Kansas's Motion to Dismiss for Failure to Join an Indispensable Party and for Lack of Subject Matter Jurisdiction (Doc. 29) and Defendant International Paper's Statement of Support for State of Kansas's Motion to Dismiss (Doc. 35)

Kansas moves to dismiss pursuant to (1) Federal Rule of Civil Procedure 12(b)(7), for failure to join an indispensable party under Federal Rule of Civil Procedure 19, and (2) Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction. Kansas argues that dismissal is appropriate under Rule 12(b)(7) because Kansas is a necessary and indispensable party that cannot be joined due to its Eleventh Amendment immunity from suit in federal court. Further, Kansas contends the court lacks subject matter jurisdiction because plaintiff lacks standing. In addition to Kansas's motion, the court has reviewed defendant International Paper's statement of support (Doc. 35). International Paper raises an additional basis for dismissal under Rule 12(b)(7): that the United States is a necessary and indispensable party that cannot be joined. The court construes defendant International Paper's "statement of support" as a motion to dismiss for failure to join the United States as an indispensable party. As set forth below, the court denies Kansas's motion to dismiss. Further, the court denies defendant International Paper's motion to dismiss for failure to join the United States.

### A. Failure to Join an Indispensable Party

#### 1. Rule 19 Standard

As the moving parties, Kansas and defendant International Paper have the burden of persuading the court that dismissal is proper. *Davis v. United States,* 192 F.3d 951, 958 (10th Cir.1999) (citation omitted). Federal Rule of Civil Procedure 12(b)(7) permits dismissal for failure to join a party pursuant to Rule 19. To address Kansas and defendant International Paper's arguments for dismissal, the court must first consider whether Kansas and the United States are necessary and indispensable parties pursuant to Federal Rule of Civil Procedure 19. Rule 19(a) provides the first step of the court's three-part analysis of whether a party is necessary:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the

person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff.

Fed.R.Civ.P. 19(a).

Determining whether a party is "necessary" is only the first step of the court's inquiry. Second, the court must determine whether joinder of the necessary party is feasible. *Citizen Potawatomi Nation v. Norton,* 248 F.3d 993, 997 (10th Cir. 2001). Third, the court must determine whether a necessary party that cannot be joined is indispensable:

> Assuming the existence of a person who should be joined if feasible, the only further question arises when joinder is not possible and the court must decide whether to dismiss or to proceed without him. To use the familiar but confusing terminology, the decision to proceed is a decision that the absent party is merely "necessary" while the decision to dismiss is a decision that he is "indispensable."

*Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 118, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

Rule 19(b) sets forth the standard for determining indispensability: "If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether **in equity and good conscience** the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed.R.Civ.P. 19(b) (emphasis added). "Whether a person is 'indispensable,' that is, whether a particular lawsuit must be dismissed in the absence of that person, can only be determined in the context of particular litigation.... [A] court does not know whether a particular person is 'indispensable' until it has examined the situation to determine whether it can proceed without him." *Provident,* 390 U.S. at 118–119, 88 S.Ct. 733.

**2. Is Kansas a Necessary and Indispensable Party?**

Kansas argues that dismissal is appropriate under Rule 12(b)(7) because Kansas is a necessary and indispensable party. To determine the issue, the court looks to the analysis required by Rule 19.

**a. Rule 19(a)(1)**

The court first examines whether complete relief can be accorded to the existing parties in Kansas's absence, as required by Rule 19(a)(1). In this case, it is clear that plaintiff and the counterclaimants could recover the declaratory and pecuniary relief they seek without the joinder of Kansas. Kansas claims no direct interest in the land in question. The record provides insufficient support for a finding that Kansas is a necessary party under Rule 19(a)(1). However, the court also must consider Kansas's contention that it is a necessary party under Rule 19(a)(2).

**b. Rule 19(a)(2)**

Pursuant to Rule 19(a)(2), the court must consider whether Kansas claims an interest relating to the subject of the action such that disposing of the action in Kansas's absence (i) as a practical matter would impair or impede Kansas's ability to protect that interest or (ii) leave the existing parties "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Fed.R.Civ.P. 19(a)(2). Specifically, Kansas argues it is a necessary party because it possesses the taxation, regulatory, and jurisdictional interests concomitant with the state sovereignty which the court discussed in its above analysis of Kansas's motion to intervene. Kansas states that its ability to

protect these interests would be impaired or impeded if the lawsuit proceeds without joining Kansas. Plaintiff does not challenge this argument.

In evaluating Kansas's interests in the litigation, the court looks to the broad definition of "interest" required by Rule 19(a)(2) as articulated by the Tenth Circuit. "Rule 19, by its plain language, does not require the absent party to actually *possess* an interest; it only requires the movant to show that the absent party *claims an interest* relating to the subject of the action. Consequently, Rule 19 excludes only those *claimed* interests that are patently frivolous." *Citizen Potawatomi Nation,* 248 F.3d at 998 (internal quotations omitted). Applying this standard, the court finds that plaintiff has not shown the interests articulated by Kansas are "patently frivolous." If title is quieted in the plaintiff tribe, Kansas would lose the taxation, regulatory, and jurisdictional powers it currently exercises. Furthermore, the court does not believe that proceeding in the absence of Kansas would subject any of the current parties "to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Fed. R.Civ.P. 19(a)(2)(ii). The court finds that Kansas is a necessary party under Rule 19(a)(2)'s standard.

**c. Feasibility of Joinder**

However, a finding that a party is necessary by no means dictates a holding that joinder of a party is required by Rule 19. The court also must determine whether a necessary party that cannot be joined is indispensable pursuant to Rule 19(b). Before beginning that inquiry, however, it is important to determine whether joinder of Kansas is feasible. *Citizen Potawatomi Nation,* 248 F.3d at 997. Here, Kansas is a party whose joinder cannot be compelled. A state's Eleventh Amendment immunity extends to suits commenced by Indian tribes. *Blatchford v. Native Vill. of Noatak & Circle Vill.,* 501 U.S. 775, 786, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991). Kansas has not waived its Eleventh Amendment immunity from suit by moving to intervene for the limited purpose of filing a motion to dismiss. *C.f., Mescalero,* 131 F.3d at 1385 n. 4 (holding that a state did not waive its Eleventh Amendment immunity by filing a counterclaim not arising out of the same transaction, because such waiver must be "unequivocal," *i.e.,* "only where stated by the most express language or by such overwhelming implication from the text [of a state statutory or constitutional provision] as [will] leave no room for any other reasonable construction") (quoting *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 239–40, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)).

**d. Rule 19(b)**

Having found that Kansas is a necessary party that cannot be joined, the court turns to the question of whether "in equity and good conscience the action should proceed among the parties before it," or should be dismissed because Kansas is indispensable. Fed.R.Civ.P. 19(b). The court is guided by the four factors set forth in Rule 19(b):

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b).[9]

With respect to the first factor, the court has recognized that Kansas has asserted taxation, regulatory, and jurisdictional interests in the lands which currently are not held in trust for the tribe. As the court has described above, these interests are significant and are different in character from the underlying property interests of the defendant landowners in this case. A judgment rendered without Kansas's participation could potentially divest the state of these rights if title is quieted in the tribe.

However, the court notes that Kansas's interest in protecting these rights is aligned with the interest of the defendant landowners, who also seek to prevent the tribe from obtaining a declaratory judgment quieting title in the tribe. Although there is not a precise alignment of interests between the defendant landowners and Kansas, the court finds that the potential prejudice to the state is lessened by the fact that the defendant landowners seek the same outcome, if for different reasons. *Accord Sac & Fox Nation of Mo. v. Norton,* 240 F.3d 1250, 1259 (10th Cir. 2001), *cert. denied,* — U.S. —, 122 S.Ct. 807, 151 L.Ed.2d 693 (2002) (finding that the Wyandotte Tribe was neither necessary nor indispensable pursuant to Rule 19 when the Secretary of Interior's interest in the suit was, "[a]s a practical matter ... 'virtually identical' to the interests of the tribe"); *Kansas v. United States,* 249 F.3d 1213, 1226 (10th Cir.2001) (holding that the tribe was neither necessary nor indispensable under Rule 19 when the state sought relief from a decision by the National Indian Gaming Commission (NIGC) that land leased by the tribe was "Indian land" for purposes of the Indian Gaming Regulatory Act, due to the presence of several defendants whose "interests, considered together, are substantially similar, if not identical to the Tribe's interests in upholding the NIGC's decision."). Further, there is no basis to conclude that a judgment rendered in Kansas's absence would prejudice the existing parties. Plaintiff and the counterclaimants could obtain satisfaction of their claims without joining Kansas as a party.

Second, the court must consider whether it could fashion relief such that the potential prejudice to Kansas would be minimized. In this case, it seems unlikely that the court could minimize any potential prejudice to the state by shaping the relief granted. The court could not shape relief to preserve Kansas's interests if title is quieted in the tribe.

9. In evaluating the interests of the parties and of Kansas, the court is mindful that "[t]he nature of the Rule 19(b) inquiry—a weighing of intangibles—limits the force of precedent and casts doubt on generalizations ...." *Sokaogon Chippewa Cmty. v. Wisconsin,* 879 F.2d 300, 304 (7th Cir.1989), *quoted in Davis v. United States,* 192 F.3d 951 (10th Cir.1999). The fact-specific nature of the court's inquiry is heightened by the fact that none of the litigants has placed before the court, nor has the court identified upon its own review, an opinion of any court addressing the issue at hand: whether dismissal is appropriate for failure to join a state as an indispensable party when the state maintains its sovereign immunity, is not a party to any underlying land transaction at issue, and claims jurisdictional, regulatory, and taxation interests which would appear to arise in every case in which an Indian tribe brings a quiet title claim. Kansas argues that the court should consider it to be "just like" Indian tribes who have successfully moved to dismiss for failure to join the tribe as an indispensable party due to tribal sovereign immunity. *E.g., Fletcher v. United States,* 116 F.3d 1315, 1324 (10th Cir. 1997); *Kickapoo Tribe of Indians v. Babbitt,* 43 F.3d 1491, 1495 n. 3 (D.C.Cir.1995). The court finds the cases cited by Kansas to be of very limited guidance given the posture of the litigants and their interests. Plaintiff does not counter Kansas's argument.

Third, the court must analyze whether a judgment rendered in the absence of Kansas would be adequate. Kansas's presence or absence would have no bearing on the determination of the property rights at issue in this litigation: whether the 1855 treaty between plaintiff and the United States divested the tribe of jurisdiction over the land; whether subsequent land patents granted by the United States to the City of Kansas City, Kansas and other purported landowners were valid; whether plaintiff is entitled to recover damages for trespass; and whether plaintiff should receive a declaration prohibiting future trespass. The court finds that it may adequately and completely adjudicate the issues before it regardless of whether Kansas is joined.

Fourth, the court must determine whether plaintiff would have an adequate remedy if the case is dismissed for nonjoinder. A finding that the tribe's suit must be dismissed for nonjoinder leaves the tribe with the option of waiving its sovereign immunity by filing suit in state court. However, the court questions whether a state court remedy is truly available to plaintiff. Kansas possesses Eleventh Amendment immunity from suit in state court without its consent, *Alden v. Maine*, 527 U.S. 706, 754, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), and would likely move to dismiss the case in state court. Moreover, there is a long-standing policy in favor of federal adjudication of suits brought by Indians if federal jurisdiction is available. *E.g., Arizona v. San Carlos Apache Tribe of Ariz.*, 463 U.S. 545, 561 n. 10, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983). Finally, it is questionable whether state courts would have subject matter jurisdiction in this case.[10]

The Tenth Circuit has found the lack of an alternative forum to be an important factor in determining whether to dismiss an action pursuant to Rule 19(b). *E.g., Sac & Fox Nation*, 240 F.3d at 1260 (noting that a court should be "extra cautious" before dismissing an action under Rule 19(b) when no alternative forum exists); *Rishell v. Jane Phillips Episcopal Mem. Med. Ctr.*, 94 F.3d 1407, 1413 (10th Cir. 1996) ("The availability of an alternative forum would weigh heavily, if not conclusively against dismissal ....").

In weighing the Rule 19(b) factors, the court finds that it can, "in equity and good conscience," proceed in Kansas's absence. Prejudice to the state's interests is minimized by the fact that the purported landowners' interests in the litigation are aligned with the state's interests. While the court cannot fashion relief to minimize any remaining prejudice to the state, it does not find this factor dispositive in light of the other considerations listed in Rule

10. United States Code title 25 section 1322 provides that "[n]othing in this section ... shall confer jurisdiction upon the State to adjudicate, in probate proceedings or otherwise, the ownership or right to possession of," *inter alia*, "real ... property ... belonging to any Indian or any Indian tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States; or shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement, or statute." 25 U.S.C. § 1322. Though the disputed land is purportedly held by public and private landowners, and not by the federal government in trust for the Tribe, the court has not identified a jurisdictional basis for a state court to adjudicate rights under a treaty between the United States government and the Wyandotte tribe, or to quiet title to land to be held in trust by the United States on behalf of the tribe.

Because the court finds adequate grounds for a determination that Kansas is not an indispensable party, however, the court declines to pass judgment on the question of whether state courts have jurisdiction over this subject matter.

19(b). Further, the court can award complete relief regardless of Kansas's absence from suit. Finally, the lack of an alternative forum for plaintiff weighs against dismissal. The court concludes that Kansas is not an indispensable party within the meaning of Rule 19(b).

Kansas thus has not met its burden to persuade the court that it is a necessary and indispensable party under Rule 19. Consequently, the court denies Kansas's motion to dismiss pursuant to Rule 12(b)(7). Having reached this decision, the court considers defendant International Paper's argument that dismissal is proper because the United States is a necessary and indispensable party.

**3. Defendant International Paper's Statement of Support (Doc. 35)**

Defendant International Paper states that dismissal is warranted under Rule 12(b)(7) because the United States is an indispensable party that cannot be joined. Plaintiff has not opposed defendant International Paper's motion to dismiss. However, as set forth below, the court denies defendant International Paper's motion.

**a. Rule 19(a)(1)**

Rule 19(a)(1) requires the court to examine whether complete relief can be accorded to the persons already parties in the absence of the United States. To determine whether complete relief can be awarded, the court must consider the type of relief sought by the parties who remain in the lawsuit. Further, the court also must analyze whether it can adjudicate the validity of land patents issued by the United States in the absence of the United States.[11]

As the court has noted, the United States was a party to the 1855 treaty which plaintiff contends did not extinguish its title to the lands in dispute. Furthermore, the United States issued the land patents which conveyed title to the current record title holders or their predecessors. In its complaint, plaintiff sought to quiet title to the Huron Cemetery Property, which is held in trust by the United States for the benefit of plaintiff, and parcel 216206, of which the United States is record owner. The United States and plaintiff entered into a Stipulation of Dismissal with Prejudice of all claims against the United States. (Doc. 27). The stipulation is perfunctory, and does not specify whether the parties agreed to dismiss because the United States asserted its Eleventh Amendment immunity.[12]

Even though the claims against the United States have been dismissed, the court must determine whether it may adjudicate the validity of the transfers of title issued by the United States to the defendants or their predecessors. Furthermore, the court also must analyze whether it could award complete relief to the plaintiff tribe. Should the tribe prevail, the court would order that the land be restored to Indian trust status. The court would therefore require the federal government to hold the land in trust for the tribe. Notably, defendant International Paper does not cite, nor has the court

11. Most courts addressing the propriety of a court's adjudicating land patents issued by the United States in the absence of the United States as a party have examined this criterion in light of Rule 19(b). However, in this case, the court believes it is a proper consideration in light of Rule 19(a)(1)'s requirement that the court must assess whether "complete relief" can be accorded to the existing parties. This necessarily requires a determination whether the court may grant the parties the relief requested in the absence of the United States.

12. The United States raised the issue of Eleventh Amendment immunity in the memorandum supporting its motion to dismiss (Doc. 10).

found upon its own review, any case addressing the issue present here: whether dismissal is appropriate upon defendant's motion for failure to join the United States as a necessary and indispensable party in a suit challenging the validity of land patents granted by the United States, when the United States was originally a party to the lawsuit and agreed to a voluntary dismissal of all claims against it with prejudice.

In *Navajo Tribe of Indians v. New Mexico,* the Tenth Circuit affirmed the district court's dismissal for failure to join the United States as an indispensable party pursuant to Rule 19(b). 809 F.2d 1455, 1471 (10th Cir.1987). The tribe brought suit against the United States to affirm its title to land within an Executive Order reservation which the United States placed in the public domain "before all congressionally mandated allotments had been made to the Navajos living on the reservation." *Id.* at 1457. The court determined that the United States could not be joined because the statute of limitations had run on plaintiff's claim pursuant to the Quiet Title Act of 1972, 28 U.S.C. § 2409(a), which was the only statute under which the tribe could have brought a quiet title action. 809 F.2d at 1468.

In affirming the district court's dismissal, the court first adopted the reasoning of the district court that adjudication of the land rights conveyed by the United States was not proper in the United States's absence.[13] The court cited with favor the "fundamental principle of the law that an instrument may not be cancelled by a Court unless the parties to the instrument are before the Court." *Id.* at 1472 (quoting *Tewa Tesuque v. Morton,* 360 F.Supp. 452 (D.N.M.1973)).[14] Furthermore, the court stated that "as a matter of federal law, it is well established that the validity of a deed or patent from the federal government may not be questioned in a suit brought by a third party against the grantee or patentee." *Id.* (quoting *Raypath, Inc. v. City of Anchorage,* 544 F.2d 1019, 1021 (9th Cir.1976)).

The court believes that *Navajo Tribe* is distinguishable on these facts. This is not a situation in which the United States has never been a party to the lawsuit, or in which the tribe cannot proceed against the United States due to a statute of limitations or a similar jurisdictional barrier.

**13.** The court discusses the application of the Rule 19(b) factors by the *Navajo Tribe* court later in the opinion.

**14.** The Eighth Circuit employed similar language in finding the United States to be a necessary and indispensable party in *Nichols v. Rysavy,* 809 F.2d 1317 (8th Cir.1987). In *Nichols,* the appellants' ancestors had received fee simple patents to land pursuant to the Dawes Act, 25 U.S.C. § 331. *Id.* at 1320. The appellants contended that the United States illegally issued the fee patents, and sought a declaration that the land was still held in trust on behalf of the tribe. *Id.* After finding that the statute of limitations barred the cause of action against the United States, *id.* at 1326, the court found the United States was a necessary and indispensable party. *Id.* at 1333–34. The court noted that if the appellants were to prevail on the merits, the United States would be reinstated as a trustee over the land and could become subject to damages claims by appellants, who sought compensation for wrongful possession. *Id.* at 1333. Because the central issue in *Nichols* was whether the United States legally granted the fee patents, the court stated its concern that "the government's liability cannot be tried 'behind its back.'" *Id.* (citation omitted). *Nichols* is distinguishable from this case, however, because the United States has settled plaintiff's claims against it. It cannot be said that this court would adjudicate the liability of the United States without its participation. Furthermore, although this court would have to order that the land be restored to Indian trust status should plaintiff prevail on the merits, the United States would not face the prospect of damages claims in this suit.

Rather, the United States initially was a party to the suit and agreed to be dismissed. These circumstances render less compelling the reasoning of *Tewa Tesuque* and *Raypath* as relied upon in *Navajo Tribe.* The United States was, at one time, a party before the court for adjudication of its rights under the 1855 treaty and the subsequent conveyances of land patents by the United States. Moreover, the reasoning of *Raypath* is not applicable upon these facts. The tribe was the initial owner of the lands in question, and argues that the 1855 treaty never effectively ceded its rights to the United States, rendering invalid the subsequent conveyances. This is a different situation from that in *Raypath,* in which a third party with no interest in the chain of title attacked the land patents issued by the United States.

The court thus concludes that it is possible to accord complete relief to the existing parties in the absence of the United States.

**b. Rule 19(a)(2)**

This rule requires the court to consider (1) whether the United States claims an interest in the subject of the action and is so situated that disposition of the action without the United States would "as a practical matter impede the ability of the United States to protect that interest," or (2) would subject any of the current parties to "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." As discussed above, the United States no longer claims an interest in the action. Consequently, there is no basis for a conclusion that the United States's ability to protect its interests has been impeded or that the title of a party who prevails on the merits would be clouded due to an existing claim by the United States. Proceeding in the absence of the United States would not subject any of the current parties to a substantial risk of incurring multiple or otherwise inconsistent obligations.

Accordingly, the court finds that the United States is not a necessary party to this litigation pursuant to Federal Rule of Civil Procedure 19(a). Even if the court were to find the United States necessary, however, it is not indispensable within the meaning of Rule 19(b).

**c. Rule 19(b)**

Defendants cite *Navajo Tribe* for the proposition that the United States is an indispensable party in a case in which the United States has issued land patents. However, the *Navajo Tribe* court's analysis of the Rule 19(b) factors is not dispositive in the case at bar. Regarding the first factor, whether a judgment rendered in the absence of the United States would prejudice either the United States or existing parties, the *Navajo Tribe* court found that prejudice to the United States would be clear. *Id.* Importantly, the court stated that the United States claimed title to much of the land at issue in the case. *Id.* Here, however, the United States has agreed to the dismissal of plaintiff's claims against it, and asserts no interest over the lands which are still at issue in the case.

A key factor considered by courts in determining indispensability is whether the United States claims an interest which is adversarial to that of the existing parties. Most courts finding that the United States was a necessary and indispensable party have noted that the United States held an interest adverse to that of the tribe. The Tenth Circuit in *Navajo Tribe* distinguished *Choctaw & Chickasaw Nations v. Seitz,* 193 F.2d 456 (10th Cir.1951), *Puyallup Indian Tribe v. Port of Tacoma,* 717 F.2d 1251 (9th Cir.1983), *Idaho v. Andrus,* 720 F.2d 1461 (9th Cir.1983), and *Narragansett Tribe of Indians v. Southern Rhode Island Land Development Corp.,*

418 F.Supp. 798 (D.R.I.1976), all of which held that the United States was *not* an indispensable party, on the grounds that, in those cases, the United States's interests were aligned with those of the plaintiff tribes. *Id.* at 1473. The *Navajo Tribe* court noted that, in the facts before it, in contrast, the United States and the tribe both claimed title to the same land, warranting a finding that the United States was indispensable. *Id.* The Eighth Circuit employed a similar analysis in *Spirit Lake Tribe v. North Dakota,* in which it held the United States to be a necessary and indispensable party because the tribe and the United States claimed interests in the same land. 262 F.3d 732, 747–48 (8th Cir.2001), *cert. denied,* — U.S. —, 122 S.Ct. 1541, 152 L.Ed.2d 468 (2002) ("*Manypenny* [*v. United States,* 948 F.2d 1057 (8th Cir.1991) ] and *Navajo Tribe* illustrate that when the government claims an interest in land that squarely conflicts with the interest of a Tribe, the government's presence in litigation is nearly always required to assure the proper and effective adjudication of the dispute.").

In a case more closely analogous to the case at bar, the Seventh Circuit found that the United States was not a necessary and indispensable party, noting the lack of potential liability faced by the United States. *Sokaogon,* 879 F.2d at 304–05. In *Sokaogon,* the tribe sued the United States, the State of Wisconsin, and private defendants to quiet title to land purportedly ceded by the tribe to the United States in an 1842 treaty. *Id.* at 301. The tribe claimed that because the United States reneged on promises made in the treaty, the tribe's right of occupancy to the land never terminated. *Id.* at 301–02. The court found that joinder of the United States was not possible due to the running of the five-year statute of limitations in the Indian Claims Commission Act, 25 U.S.C. § 70 *et seq.* However, the court declined to find that the United States was an indispensable party under Rule 19(b). In its analysis, the court distinguished *Nichols* and *Navajo Tribe,* among other cases, on the grounds that in *Nichols,* the United States was "clearly exposed" to potential liability to the grantee of the land patents it issued. 879 F.2d at 304–05. The court pointed out that, while in *Navajo Tribe,* the United States had claimed to own land in which the tribe sought to quiet title, in the case pending before the Seventh Circuit, "the U.S. [had] expressed no fear of liability or other burdens as a consequence of a judgment in favor of the plaintiffs." *Id.* at 305.[15]

In addition, the Tenth Circuit in *Mescalero Apache Tribe v. New Mexico* rejected the plaintiff tribe's argument that the United States was an indispensable party. 131 F.3d at 1383–84. The court noted that the United States was not a party to the compact at issue in the case, that its absence did not prejudice any of the existing parties, and that the issues had been fully and fairly presented to the district court in

15. Accord *Red Lake Band of Chippewas v. City of Baudette,* 730 F.Supp. 972 (D.Minn.1990). In *Red Lake,* the tribe sought an adjudication that land it relinquished to the United States pursuant to the Nelson Act, ch. 24, 25 Stat. 642, was never properly transferred. *Id.* at 974. This factual posture is close to that of the case at bar, in which plaintiff argues that the 1855 treaty never ceded plaintiff's interest to the United States. The *Red Lake* court distinguished *Nichols, Navajo Tribe,* and other cases on the grounds that those cases "ultimately [were] disputes about the legality of actions taken by the United States," whereas in *Red Lake,* the tribe sought a determination whether it was entitled to rental value of land which the United States purported to convey to subsequent landowner; thus, a determination of the nature of the interest granted—whether it was an easement or a fee interest—was necessary. *Id.* at 978.

the absence of the United States. *Id.* at 1384.

Consequently, the court believes that the United States would suffer no prejudice if a judgment were rendered in its absence. The United States chose to settle plaintiff's claims against it. This consideration weighs against a finding that the United States would be prejudiced if the action is adjudicated in its absence.

Having found that no prejudice to the United States exists, this court gives little weight to the second Rule 19(b) factor: whether the court could fashion a remedy to reduce the risk of prejudice. Given the nature of a quiet title action, it would be unlikely the court could shape relief to minimize any prejudice to the United States.

Third, Rule 19(b) requires the court to consider whether a judgment rendered in the absence of the United States would be adequate. The *Navajo Tribe* court found that in light of the large holdings of land claimed by the United States, any judgment rendered in the absence of the United States would be inadequate. *Id.* As this court has explained, however, none of the United States's claims to land remain at issue here.

Finally, the court considers the fourth Rule 19(b) factor: the availability of an alternative remedy. In *Navajo Tribe,* the Tenth Circuit found that the tribe had no state court forum, but nevertheless determined that factor was not dispositive. *Id.* at 1473. As this court discussed in its above analysis regarding the question of whether Kansas was an indispensable party, state court likely is a disfavored, if not unavailable, forum for plaintiff in this case. At any rate, it is not a forum in which the United States would be amenable to suit due to its Eleventh Amendment immunity.

Applying the Rule 19(b) factors, the court believes it can proceed in equity and good conscience without the United States. A judgment rendered without joinder of the United States would be adequate as among the existing parties, and would not prejudice the United States. Finally, the court notes that an alternative remedy likely does not exist for plaintiff in this case. The court thus denies defendant International Paper's motion to dismiss for failure to join the United States as an indispensable party pursuant to Federal Rule of Civil Procedure 12(b)(7).

## B. Lack of Subject Matter Jurisdiction

Intervenor Kansas moves the court to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) on the grounds that plaintiff lacks standing. Plaintiff offers no opposition. As set forth below, because Kansas's motion is intertwined with the merits of the case, the court considers Kansas's motion to be a Rule 12(b)(6) motion to dismiss for failure to state a claim, and denies the motion.

### 1. Conversion of Rule 12(b)(1) Motion to Rule 12(b)(6) Motion

"Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may take one of two forms. First, a party may make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint.... 'Second a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.'" *United States v. Rodriguez Aguirre,* 264 F.3d 1195, 1203 (10th Cir. 2001) (quoting *Holt v. United States,* 46 F.3d 1000, 1002 (10th Cir.1995)). "In addressing a factual attack, the court does not 'presume the truthfulness of the complaint's factual allegations,' but 'has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to

resolve disputed jurisdictional facts under Rule 12(b)(1).' " *Holt,* 46 F.3d at 1003, *cited in United Tribe of Shawnee Indians v. United States,* 253 F.3d 543, 548 (10th Cir.2001).

In arguing that plaintiff lacks standing, Kansas contends that the 1855 treaty conveyed plaintiff's land to the United States, thus terminating any of plaintiff's interest in the lands at issue. Kansas attaches a copy of the 1855 treaty and a Kansas State Historical Society Report recording the descriptions of the allotments of land issued by the United States.

Generally, a Rule 12(b)(1) motion is not converted into a Rule 12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment. However, "[i]f the jurisdictional question is intertwined with the merits of the case, the issue should be resolved under Rule 12(b)(6) or Rule 56." *Wheeler v. Hurdman,* 825 F.2d 257 (10th Cir.1987). The jurisdictional question is "intertwined with the merits of the case" if subject matter jurisdiction depends upon the same legal basis as do the substantive claims in the case. *Clifton v. Mars Telecom, Inc.,* No. 95–2364–JWL, 1996 WL 157288 (D.Kan. Mar.5, 1996).

Here, Kansas's argument that the court lacks subject matter jurisdiction clearly goes to the merits of the lawsuit: whether the 1855 treaty extinguished the tribe's rights in the property and whether the United States legally issued the patents. The court consequently deems Kansas's motion a motion to dismiss pursuant to Rule 12(b)(6). *Accord Pringle v. United States,* 208 F.3d 1220, 1222–23 (10th Cir. 2000). A court must convert a Rule 12(b)(6) motion into a Rule 56 motion if "matters outside the pleading are presented to and not excluded by the court" and "all parties ... [are] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R.Civ.P. 12(c). The court has examined the two documents Kansas attaches to its motion. Upon doing so, however, the court is not required to convert the motion into one for summary judgment under Rule 56. "If a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997). The 1855 treaty and land patents submitted by defendant are covered by this rule, because they are central to plaintiff's claim and the court does not question their authenticity. Consequently, the court applies Rule 12(b)(6)'s standard to defendant's motion.

**2. Rule 12(b)(6) Standard**

The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher v. Durango Metals, Inc.,* 144 F.3d 1302, 1304 (10th Cir.1998), or when an issue of law is dispositive, *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher,* 144 F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468

U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

### 3. Kansas's Argument

Kansas argues that in the 1855 treaty of cessation, plaintiff conveyed the property at issue in the lawsuit to the United States. Kansas emphasizes that the treaty was a "clear expression of congressional intent" to dissolve the tribal government and disestablish the reservation which had been in existence. After reviewing Kansas's argument, the court does not believe that plaintiff can prove no set of facts upon which relief may be granted. Indeed, plaintiff states in its complaint that the treaty's silence as to the "gifted lands" at issue here meant that such lands were not transferred. Given this dispute as to the meaning of the contract language, the court cannot find, at this time, that there are no grounds upon which plaintiff could obtain relief. Consequently, the court denies intervenor Kansas's motion to dismiss for failure to state a claim.[16]

Kansas's Motion to Dismiss for Failure to Join an Indispensable Party and for Lack of Subject Matter Jurisdiction (Doc. 29) is thus granted in part and denied in part. The court grants the motion by Kansas to intervene for the purpose of filing a motion to dismiss for failure to join Kansas as an indispensable party and for lack of subject matter jurisdiction. The court denies the motion to dismiss for failure to join Kansas as an indispensable party. Further, the court denies the motion to dismiss for lack of subject matter jurisdiction.

## VI. Order to Show Cause (Doc. 32)

United States Magistrate Judge David J. Waxse issued a Notice and Order to Show Cause to the plaintiff why no service of the summons and complaint in this case has been accomplished upon defendants William J. Willhite and John Does # 1–200. Federal Rule of Civil Procedure 4(m) provides that:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m). Plaintiff filed its complaint on June 18, 2001. To date, the record does not reveal that service has been executed upon defendants William J. Willhite or John Does # 1–200.

In Plaintiff's Response to Order to Show Cause (Doc. 36), plaintiff stated that it had mailed a notice of the commencement of the action and a copy of the complaint to defendant Willhite, and requested him to waive service of summons, but defendant Willhite had neither responded to the request, nor were the materials mailed to him returned to the plaintiff. Plaintiff further states that his counsel "was in the process of verifying defendant Willhite's ownership of the property in question and his address as part of its attempts to identify each of the owners of property within

16. Next, Kansas claims plaintiff is "chargeable with laches for failure to bring its claims within the time prescribed by statutes." This argument has no bearing on whether the court has subject matter jurisdiction; rather, it is an affirmative defense properly asserted by a defendant in an answer. Fed.R.Civ.P. 8(c). Because Kansas is not a defendant in this case, and without passing judgment on the merits of Kansas's argument, the court merely notes that the argument is improperly before the court at this time.

the area subject to plaintiff's claims herein who are ultimately to be named and substituted for defendants now only identified as John Does # 1–200." (Pl.'s Resp. at 2). Plaintiff further states it "has expended considerable sums working through title companies in an effort to accurately identify the real parties in interest of these properties and to avoid mistakes." (*Id.*) Finally, plaintiff states that it has no opposition to the dismissal of defendants Willhite and John Does # 1–200 without prejudice pursuant to the Stipulation for Order of Dismissal.

Whether good cause exists is a matter committed to the sound discretion of the trial court. *Fin. Instruments Group, Ltd. v. Leung,* 30 Fed.Appx. 915, 917, 2002 WL 321899 (10th Cir.2002). At a minimum, good cause requires a showing of excusable neglect, including good faith and a reasonable basis for failure to comply with the rules. *E.g., Adams v. Allied-Signal Gen. Aviation Avionics,* 74 F.3d 882, 887 (8th Cir.1996). The court does not believe plaintiff has shown bad faith in failing to serve these defendants. Nevertheless, the amount of time which has passed since plaintiff filed its complaint on June 18, 2001, gives the court pause. Plaintiff has the burden to identify and serve any party it wishes to subject to the court's authority. Consequently, the court finds plaintiff has not shown good cause.

The court must further examine whether plaintiff should be afforded a permissive extension of time to serve these defendants. *Espinoza v. United States,* 52 F.3d 838, 842 (10th Cir.1995). The court believes a permissive extension of time is warranted in this case, given that there is no evidence of bad faith on the part of the plaintiff. **Accordingly, the court orders plaintiff to serve defendants William J. Willhite and John Does # 1–200 before May 17, 2002. If these defendants are not served prior to May 17, 2002, the court will dismiss plaintiff's complaint as against these defendants without prejudice pursuant to Federal Rule of Civil Procedure 4.**

## VI. Motions for Oral Argument

District of Kansas Local Rule 7.2 provides that "[r]equests for oral arguments on motions shall be granted only at the discretion of the court." Having found a sufficient basis for a ruling in the pleadings before the court, the court denies the motions for oral argument by defendants the Modeers and intervenor Kansas.

## VII. Conclusion

**IT IS THEREFORE ORDERED** that the court declines to enter Plaintiff's Stipulation of Dismissal Without Prejudice Pursuant to Rule 41(a)(2) (Doc. 40).

**IT IS FURTHER ORDERED** that the State of Kansas's Motion for Limited Intervention to Dismiss for Failure to Join an Indispensable Party and for Lack of Subject Matter Jurisdiction (Doc. 29) is granted in part and denied in part. The court grants the motion to intervene for the purpose of filing a motion to dismiss for failure to join an indispensable party and for lack of subject matter jurisdiction. However, the court denies the motion to dismiss for failure to join an indispensable party and for lack of subject matter jurisdiction. Having ruled upon the motions for which Kansas sought to intervene, the court notes that Kansas is not a party to the suit, nor does it maintain status as an intervenor.

**IT IS FURTHER ORDERED** that the court denies defendant International Paper's Statement of Support for the State of Kansas's Motion to Dismiss, in which defendant International Paper also moved the court to dismiss for failure to join Kansas and the United States as a indispensable parties (Doc. 35). The court also

denies defendant International Paper's motion to dismiss for failure to join the United States as an indispensable party.

Further, the court finds that plaintiff has failed to demonstrate good cause why defendants William J. Willhite and John Does # 1–200 should not be dismissed, and orders plaintiff to serve them by May 17, 2002.

The requests for oral argument made by defendants the Modeers and by movant Kansas are denied.